**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 2, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

MADYUN ABDULHASEEB,
a/k/a Jerry L. Thomas,

      Plaintiff-Appellant,

v.

SAM CALBONE, Warden; KEN
WOOD, Chaplain; LT. BARGER,
Disciplinary Officer; TRAVIS
SMITH, Deputy Warden;
J. HASKINS, Grievance Coordinator;
VANWEY, Case Manager;
ELIZONDO, Unit Manager;
BRANUM, Investigator; RON WARD,
Director; MELINDA GUILFOYLE,
Manager of Administrative Review &
Designee; DEBBIE MORTON,
Manager of Administrative Review &
Designee; RICHARD KIRBY, General
Counsel; RON ANDERSON, Deputy
General Counsel; MIKE MULLIN,
Warden; G. FRANZESE, Chaplain;
KAMERON HARVANEK, Deputy
Warden; MR. MOCK, Food Service
Supervisor; MS. CARTWRIGHT,
Food Service Supervisor; MAJOR
DEVAUGHN, Chief of Security;
LT. BEASLEY; Z. JACQUES, Deputy
Warden at GPCF; DISHMAN,
Grievance Coordinator,

      Defendants-Appellees,

  and

No. 08-6092

KENNY DEMBY, Food Service
Supervisor,

        Defendant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:05-CV-01211-W)**

---

Elizabeth L. Harris (Andrew Myers with her on the brief), Jacobs Chase Frick
Kleinkopf & Kelley, LLC, Denver, Colorado, for Plaintiff-Appellant.

Kim M. Rytter, Assistant Attorney General, Oklahoma Attorney General's Office,
Litigation Section, Oklahoma City, Oklahoma, for Defendants-Appellees Ward,
Guilfoyle, Morton, Kirby, Anderson, Mullin, Franzese, and Harvanek.

Don G. Pope, Don G. Pope & Associates, P.C., Norman, Oklahoma, for
Defendants-Appellees Calbone, Vanwey, Wood, Branam, Elizondo, Beasley,
Jacques, Haskins, DeVaughn, Barger, Dishman, and Smith.

Peter M. Coppinger and Gregory D. Cote, McCarter & English, LLP, Boston,
Massachusetts, for Defendants-Appellees Mock and Cartwright.

---

Before **HENRY**, Chief Judge, **EBEL** and **GORSUCH**, Circuit Judges.

---

**HENRY**, Chief Judge.

---

      Madyun Abdulhaseeb, an Oklahoma inmate who follows the Islamic faith,

filed suit under the Religious Land Use and Institutionalized Persons Act of 2000

(RLUIPA), 42 U.S.C. §§ 2000cc to 2000cc-5,[1] and 42 U.S.C. § 1983, setting forth

---

[1]     RLUIPA applies to programs or activities receiving federal financial
                                                    (continued...)

seventeen claims concerning his conditions of incarceration. The district court dismissed without prejudice several of his claims for failure to exhaust administrative remedies and granted summary judgment to defendants on the remaining claims. Mr. Abdulhaseeb appeals. Initially he proceeded pro se, but we appointed counsel to represent him for supplemental briefing and oral argument.[2]

We have jurisdiction under 28 U.S.C. § 1291. We affirm the judgment in favor of defendants on the majority of Mr. Abdulhaseeb's claims, but we vacate and remand for further proceedings on two claims. Mr. Abdulhaseeb established that he was entitled to proceed with his RLUIPA claims, first, that his religious exercise was substantially burdened when officials at the Oklahoma State Penitentiary (OSP) denied his request for a halal diet and, second, when officials at the Great Plains Correctional Facility (GPCF) denied his request for halal meat for an Islamic feast. *See, e.g.*, *Williams v. Morton*, 343 F.3d 212, 215 (3d Cir. 2003) ("A Halal, or lawful, diet includes fruits, vegetables, seafood, and meat from herbivorous animals such as cows and chickens that are properly

---

[1](...continued)
assistance. 42 U.S.C. § 2000cc-1(b)(1). Defendants have not argued that the Oklahoma correctional system does not receive federal financial assistance, and we presume that it does. *See Cutter v. Wilkinson*, 544 U.S. 709, 716 n.4 (2005) ("Every State . . . accepts federal funding for its prisons.").

[2]     Our appointment of counsel was for purposes of the appeal only. We request that the district court appoint counsel for Mr. Abdulhaseeb on remand so that evidentiary hearings can be pursued properly.

slaughtered."). The record with regard to these two RLUIPA claims is insufficient for us to determine whether the burden on Mr. Abdulhaseeb's religious exercise is justified by a compelling governmental interest and is the least restrictive means of accomplishing that interest. Thus, these claims are remanded for further proceedings in the district court.

## I. BACKGROUND

### A. The events underlying the litigation.

Between June 4, 2001, and January 27, 2005, Mr. Abdulhaseeb was incarcerated at GPCF, a private prison that contracts with the state of Oklahoma to hold Oklahoma prisoners. Defendants Calbone, Vanwey, Wood, Branum, Elizondo, Beasley, Jacques, Haskins, DeVaughn, Barger, Dishman, and Smith (the GPCF Defendants) are or were employees at GPCF. Defendants Mock and Cartwright (the Canteen Defendants) are or were employed by a third-party company to work in the GPCF canteen.

While at GPCF, among other issues related to the prison's treatment of Muslims and issues unrelated to his religion, Mr. Abdulhaseeb sought to be provided halal foods. In October 2004, he filed a request to staff and a grievance concerning being forced to accept puddings and jello on his tray. In his request to staff, he stated that some of the GPCF Defendants and the Canteen Defendants "are representing this pudding & jello as halal and kosher, but it doesn't have an U, K, or H. So it is unlawful, containing forbidden monoglyceride, lecithin, and

-4-

whey." R. Doc. 62, Exh. 2, p. 4 of 4. A GPCF staff member (apparently defendant DeVaughn), responded, "IM [Inmate] Thomas, you will be served in accordance with the approved menu." *Id.*[3] Mr. Abdulhaseeb followed up with a grievance to the warden (defendant Calbone), noting that "[t]he puddings/jello are not Halal. They don't carry Halal or kosher symbols (H, K, and U)." *Id.*, p. 2 of 4. He requested that he be provided "with an alternative to pudding & jello," *id.*, and that GPCF purchase halal-certified or kosher-certified desserts or allow him fruit as an alternative. Defendant Calbone denied relief, indicating that Mr. Abdulhaseeb had not been forced to place jello or pudding on his tray and that the jello and pudding were pork-free and did not contain pork by-products, "thus meeting your Islamic beliefs." R. Doc. 125, Exh. 3 at 2.

In November 2004, Mr. Abdulhaseeb filed another request to staff and a grievance requesting that GPCF provide halal chickens for the general population for the Islamic feast of Eid-ul-Adha in January 2005. Defendant Calbone denied the grievance, stating, "DOC policy allows you to purchase a Hallal meal <u>through an approved vendor</u>. The practice at GPCF, which includes this year, is to provide an Hallal meal at the conclusion of Ramadan. Relief denied." R. Doc. 62, Exh. 5, p. 3 of 4. Mr. Abdulhaseeb unsuccessfully appealed to the

---

[3]     At that time, Oklahoma Department of Corrections (ODOC) did not offer a kosher meal option. The pertinent portions of ODOC Policy OP-030112, effective June 26, 2002, and its amendments are appended to this opinion.

Oklahoma Department of Corrections (ODOC), arguing that under Tenth Circuit precedent he should not have to purchase religious food or have it donated.

On January 27, 2005, Mr. Abdulhaseeb was transferred to OSP, a facility run by ODOC. Defendants Mullin, Franzese, and Harvanek (the OSP Defendants) are or were employed at OSP. The remaining defendants (Ward, Guilfoyle, Morton, Kirby, and Anderson) are or were employees of ODOC (the ODOC Defendants).

Soon after his arrival at OSP, among other issues related to the prison's treatment of Muslims, Mr. Abdulhaseeb again requested halal foods. In a February 6, 2005, request to staff, he wrote:

> I am a Muslim. I request a Halal diet that is consistent with my sincerely held religious beliefs and does not substantially burden my freedom of religious expression and is the least restrictive means of vindicating your penological interests. Your non-pork common fare diet and vegetarian diet are not diets that are consistent with Islamic dietary laws.

*Id.*, Exh. 9, p. 4 of 4. He requested that OSP "[p]rovide [him] [an] Islamic diet in which animals are fed, raised, and slaughtered according to Islamic dietary laws and ingredients are clearly Halal and foods and ingredients which are questionable (unknown) are completely avoided, such as jello and puddings." *Id.* Defendant Franzese responded, "[a]s per policy OP-030112 VII.A., the Department of Corrections provides two types of diets for religious reasons:

-6-

(1) non-pork, (2) vegetarian. For a modified health diet, you must contact the medical staff." *Id.* Mr. Abdulhaseeb then filed a grievance, in which he stated:

> I am a Muslim. The Qur'an and Sunnah (traditions) of Prophet Muhammad order me to eat food that is good and lawful pursuant to Islamic dietary laws. In this 10th Circuit, inmates have a constitutional right to a diet consistent with their sincerely held religious beliefs. You feed me a common fare non-pork diet or a vegetarian diet[]. Those diets are sinful and repugnant to me and violate the requirements of Halal Islamic dietary laws. I require a Halal diet defined by the Qur'an and Sunnah, including meats and poultry raised, grain fed, no steroids, and slaughtered according to Islamic laws. My diet also requires that I avoid foods that are questionable with regard to its make up and ingredients. Doubtful or questionable ingredients are forbidden.

*Id.*, p. 2 of 4. He requested that OSP provide him "with a Halal diet that is consistent with my sincerely held Islamic dietary law." *Id.* Defendant Mullin, then the warden at OSP, responded, "as you were informed in the response to your request to staff, dated February 7, 2005, OP-030112 provides (2) two diets for religious reasons. You may elect either the non-pork or the vegetarian diet. . . . Your request for a special Islamic diet is denied." *Id.*, p. 1 of 4. Mr. Abdulhaseeb unsuccessfully appealed to ODOC, arguing

> 1. The Reviewing Authority erred in denying my request for a diet that is consistent with my sincerely held religious belief under the color of state laws. Supporting Facts. The Holy Qur'an and Sunnah mandate that I eat meats lawfully slaughtered and all good foods. The two diets in OP-030112.VII.A do not me[et] the Islamic standard. Beerheide v. Suther, 286 F.3d 1194 (10th Cir. 2002).
> 2. Reviewing authority erred in that his resolution was not the least restrictive and substantial[ly] burdens my free expression of religion. Supporting Facts. The nonpork diet is most restrictive and forces me to eat meats prohibited (not slaughtered Islamically) to survive. The

-7-

vegetarian diet usurps the power of God to prescribe what is lawful and prohibited and is a form of [indiscipherable] (Association of Partners with God). God says eat lawful meats. Allah (God) says avoid doubtful matters. I am forced to do without food or eat food I don't know what ingredients are in it like or what it is made of like jello and pudding. See 42 U.S.C. § 2000cc et seq. (2000).

*Id.*

On March 3, 2005, Mr. Abdulhaseeb returned to GPCF, where he remained for a time until he again was transferred. He currently is incarcerated at the Lawton Correctional Facility, which, we were informed at oral argument, also is subject to ODOC policies. Under the current ODOC policy, prisoners may select a non-pork or vegetarian meal option, and Jewish prisoners may select a kosher meal option.

**B.     The proceedings in the district court.**

Mr. Abdulhaseeb's second amended (and verified) complaint asserted seventeen claims under RLUIPA and § 1983. The claims are summarized below by number, with parentheticals indicating the underlying legal basis for the claim:

*A. Initial Claims Concerning GPCF*

Claim 1: Failing to provide him a full-time paid Muslim spiritual leader at GPCF (RLUIPA);

Claim 2: Forcing him to accept jello and pudding on his food tray at GPCF (RLUIPA);

Claim 3: Denying his request to add a second friend to his visiting list at GPCF (§ 1983);

Claim 4: Failing to host an Islamic revival at GPCF (RLUIPA);

-8-

Claim 5: Failing to provide halal meats for the Islamic feast of Eid-ul-Adha in January 2005 at GPCF (RLUIPA);

Claim 6: Establishing Christianity as the state religion at GPCF (RLUIPA);

Claim 7: Printing and passing out Christian religious pamphlets at GPCF during the winter holiday season (RLUIPA);

Claim 8: Retaliating against him for exercising his right to petition for redress of grievances at GPCF (§ 1983); and

Claim 9: Failing to allow Muslim inmates to purchase halal meats for the Islamic feast of Eid-ul-Fitr at GPCF (RLUIPA).

*B. Claims Concerning OSP*

Claim 10: Denying him a halal diet at OSP (RLUIPA);

Claim 11: Spending state-appropriated money on secular needs only and not on religious needs; treating religion differently (RLUIPA, § 1983);

Claim 12: Failing to provide a paid Muslim spiritual leader at OSP (RLUIPA);

Claim 13: Failing to replace his confiscated hardcover Islamic books with soft-cover books at OSP (RLUIPA); and

Claim 14: Denying him the opportunity to attend Jumu'ah services at OSP (RLUIPA).

*C. Further Claims Concerning GPCF*

Claim 15: Refusing to adjust his classification level at GPCF after a misconduct was overturned (§ 1983);

Claim 16: Denying a promotion and earned credit at GPCF after a misconduct was overturned (§ 1983); and

Claim 17: Denying special pay for a special project at GPCF (§ 1983).

All defendants moved for summary judgment, and the magistrate judge issued a comprehensive report and recommendation. He concluded that Mr. Abdulhaseeb had not exhausted his administrative remedies with regard to Claims 6 through 9 and 14 through 17. He recommended a grant of summary judgment on the merits of all the remaining claims. Mr. Abdulhaseeb objected. Arguing that the magistrate judge had stayed discovery pending defendants' preparation of a special report, he also requested time to conduct discovery pursuant to Federal Rule of Civil Procedure 56(f). The district court denied the Rule 56(f) motion. The district court adopted the report and recommendation and entered judgment on all claims in favor of the defendants. Mr. Abdulhaseeb appeals.

## C.    Summary of our opinion.

In Part II.A., we affirm the district court's dismissal of Claims 6 through 9 and 14 through 17 for failure to exhaust administrative remedies. In Part II.B., we reject Mr. Abdulhaseeb's contention that he was improperly barred from conducting discovery as a separate ground for reversing the district court's decision, and we hold that the district court did not abuse its discretion in denying the Rule 56(f) motion. In Part II.C., we turn our attention to the two RLUIPA

-10-

claims that we conclude require further proceedings.  Concluding that the claims are not moot even though Mr. Abdulhaseeb has been transferred away from OSP and GPCF, we hold that the district court erred in granting summary judgment to the OSP Defendants and the ODOC Defendants on Claim 10 and to the GPCF Defendants and the ODOC Defendants on Claim 5.  In Part II.D., we consider the claims on which we affirm the grant of summary judgment to defendants, and, finally, in Part III, we state our conclusion.

## II.  ANALYSIS

**A.    The district court properly dismissed the unexhausted claims.**

Mr. Abdulhaseeb first challenges the district court's determination that he failed properly to exhaust his administrative remedies with regard to Claims 6 through 9 and 14 through 17.  Having reviewed the determination of failure to exhaust de novo, *see Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007), we are not persuaded that the administrative process was inadequate, whether because of the ex parte communications of which Mr. Abdulhaseeb complains or otherwise.  For substantially the reasons set forth in the magistrate judge's report and recommendation, we accept the conclusion that Claims 6 through 9 and 14 through 17 were not exhausted and affirm the dismissal without prejudice of those claims.

**B.**    **The district court did not err in staying discovery pending the defendants' preparation of a *Martinez* report or in denying Mr. Abdulhaseeb's subsequent Rule 56(f) motion.**

Mr. Abdulhaseeb next argues that the district court erred in granting summary judgment to defendants on his exhausted claims because he was not allowed to conduct any discovery. The magistrate judge's order for a report, pursuant to *Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978) (en banc) (per curiam), stayed further discovery until the court ordered otherwise. Mr. Abdulhaseeb complains that the magistrate judge entered his report and recommendation without lifting the stay on discovery, and, moreover, that the local practice of staying plaintiffs' discovery pending defendants' preparation of a *Martinez* report is inconsistent with the discovery provisions of the Federal Rules of Civil Procedure.

Discovery and scheduling are matters within the district court's broad discretion. *See King v. PA Consulting Group, Inc.*, 485 F.3d 577, 591 (10th Cir. 2007). The practice of ordering a *Martinez* report, which was approved by this circuit in 1978, allows the assembly of a record "necessary for the orderly consideration of the issues." *Martinez*, 570 F.2d at 319. We are not persuaded that staying discovery pending an evaluation of the report constitutes an abuse of discretion or impermissibly contravenes the discovery provisions of the federal rules.

To the extent Mr. Abdulhaseeb believed he did not have sufficient opportunity to discover necessary evidence, Federal Rule of Civil Procedure 56(f) provided his remedy. He filed a Rule 56(f) motion before the district court, and he argues on appeal that the court did not construe his motion liberally. The denial of a Rule 56(f) motion is reviewed for abuse of discretion. *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006). For two reasons, the district court did not abuse its discretion in denying the motion.

First, Mr. Abdulhaseeb failed to invoke Rule 56(f) before the magistrate judge, instead filing his motion in the district court after the magistrate judge's report and recommendation was filed. Thus, he waived his Rule 56(f) issues. *See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("[T]he nonmovant must carry its burden in the district court in a timely fashion . . . or explain why it cannot pursuant to Rule 56(f). Otherwise, the nonmovant acts, or fails to act, at its peril." (citation omitted)).

Second, while pro se litigants are entitled to a liberal reading of their filings, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam), they still must follow the established procedures governing Rule 56(f) motions, *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993). "A party seeking to defer a ruling on summary judgment under Rule 56(f) must file an affidavit that explains why facts

-13-

precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts." *Trask*, 446 F.3d at 1042 (quotation omitted); *see also Garcia v. U.S. Air Force*, 533 F.3d 1170, 1179 (10th Cir. 2008) ("A party may not invoke Rule 56(f) by simply stating that discovery is incomplete but must state with specificity how the additional material will rebut the summary judgment motion.") (quotations omitted). Mr. Abdulhaseeb's conclusory declaration under penalty of perjury failed to provide the specific information required for relief under Rule 56(f). We will not reverse the grant of summary judgment on the basis of the Rule 56(f) ruling.

**C.     The district court erred in granting summary judgment on two claims under RLUIPA.**

Mr. Abdulhaseeb raises several arguments regarding the merits of the district court's grant of summary judgment on Claims 1 through 5 and 10 through 13. "This court reviews an award of summary judgment *de novo*, viewing the record in the light most favorable to the non-moving party. Moreover, this court construes a *pro se* party's pleadings liberally." *Hammons v. Saffle*, 348 F.3d 1250, 1254 (10th Cir. 2003) (citation omitted). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

-14-

"[A] verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)." *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) (per curiam). While we affirm the district court's disposition of the majority of the claims, *see* Section II.D. below, we conclude that RLUIPA Claims 5 and 10 must be remanded for further proceedings.

### 1.    The RLUIPA claims are not moot.

First, however, we must consider whether we retain jurisdiction to consider the RLUIPA claims, in light of Mr. Abdulhaseeb's transfer away from OSP and GPCF, and his representation to this court that he brought his RLUIPA claims against defendants in their official capacities, *see* Aplt. Pro Se Opening Br., Attach. p. 24.[4]

"Article III delimits the jurisdiction of federal courts, allowing us to consider only actual cases or controversies." *Kan. Jud. Review v. Stout*, 562 F.3d 1240, 1245 (10th Cir. 2009). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quotation omitted). "In deciding whether a case is moot, the crucial question is whether granting a

---

[4]    Mr. Abdulhaseeb also asserts that he brought his § 1983 claims against defendants in their individual capacities. Because money damages are available, mootness is not an issue with regard to those claims.

present determination of the issues offered will have some effect in the real world.  When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." *Kan. Jud. Review*, 562 F.3d at 1246 (citation and quotation omitted).

RLUIPA provides for an award of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), but it does not specify exactly what type(s) of relief may be "appropriate."  Mr. Abdulhaseeb requested both money damages and injunctive relief.

Because Mr. Abdulhaseeb has been transferred away from OSP and GPCF, it appears that declaratory and injunctive relief will not be available against the OSP Defendants, the GPCF Defendants, and the Canteen Defendants.  *See Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (holding that once prisoner was released from the prison system, neither declaratory nor injunctive relief would have any effect on defendants' behavior); *Love v. Summit County*, 776 F.2d 908, 910 n.4, 912 (10th Cir. 1985) (indicating that the general rule applies to a transfer between prisons).

Further, he may not be able to recover money damages on his RLUIPA claims, at least not against the OSP Defendants and the ODOC Defendants. Several circuit courts have held, under the principles of sovereign (Eleventh Amendment) immunity, that money damages are not available for official-capacity RLUIPA claims.  *See Van Wyhe v. Reisch*, 581 F.3d 639, 654-55

-16-

(8th Cir. 2009), *petition for cert. filed* (Jan. 8, 2010) (No. 09-821), *petition for cert. filed* (Feb. 9, 2010) (No. 09-953); *Nelson v. Miller*, 570 F.3d 868, 884-85 (7th Cir. 2009); *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir.), *petition for cert. filed*, 78 U.S.L.W. 3065 (July 22, 2009) (No. 09-109); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 331 (5th Cir.), *petition for cert. filed*, 77 U.S.L.W. 3657 (May 22, 2009) (No. 08-1438); *Madison v. Virginia*, 474 F.3d 118, 131 (4th Cir. 2006).  This view is supported by the statement by one of RLUIPA's sponsors in the House of Representatives.  *See* 146 Cong. Rec. 19123 (Sept. 22, 2000) (statement of Rep. Canady) ("These claims and defenses lie against a government, but the Act does not abrogate the Eleventh Amendment immunity of states.").  On the other hand, one circuit court has concluded that monetary relief is available against official-capacity defendants in RLUIPA suits (although, the court also acknowledged, for a prisoner plaintiff, the Prisoner Litigation Reform Act generally will limit such relief to nominal damages). *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007).

But we need not decide the issue of Eleventh-Amendment immunity in this appeal.  The defendants have not raised the issue before us, and we find it unnecessary at this time to decide sua sponte whether money damages are available against official-capacity defendants in a RLUIPA case.  *See U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (noting that Eleventh-Amendment immunity is waivable, and need not be raised by the court

sua sponte).  Even if Mr. Abdulhaseeb cannot recover money damages against any defendant or injunctive relief against the prison-specific defendants, the courts may still fashion some effective relief.  The ODOC Defendants, particularly the director of ODOC, remain parties to the litigation.  The reasons given for denying Mr. Abdulhaseeb's requests for halal foods involved ODOC policies, and the director of ODOC has final policymaking authority for ODOC.  Mr. Abdulhaseeb remains incarcerated in ODOC's custody, subject to ODOC policies, and a judgment in his favor may require ODOC to modify those policies.  Thus, relief remains available, and the RLUIPA claims are not moot.  *See Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir. 1999) (holding that an Americans With Disabilities Act claim was not moot, despite plaintiff's transfer to a different state prison, where plaintiff sued the Department of Corrections, "which controls both prisons and the funding necessary to provide the sign language interpreter requested").

> **2.    For purposes of avoiding summary judgment on his Claim 10, Mr. Abdulhaseeb adequately demonstrated a genuine issue of material fact whether the denial of halal foods at OSP substantially burdened his religious exercise.**

In Claim 10, Mr. Abdulhaseeb complains that at OSP he was denied a halal diet that included meat, in violation of RLUIPA.  In relevant part, RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . .

-18-

unless the government demonstrates that imposition of the burden on that person --

**(1)** is in furtherance of a compelling governmental interest; and

**(2)** is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Thus, to proceed with his RLUIPA claim, Mr. Abdulhaseeb must demonstrate he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government. *See Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001) (requiring these elements in prisoner suit under the similar language of the Religious Freedom Restoration Act of 1993 (RFRA))[5]; *see also Werner v. McCotter*, 49 F.3d 1476, 1479 n.1 (10th Cir. 1995) (holding that "the burdened belief must be sincerely held by the plaintiff"); *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 660-61 (10th Cir. 2006) (assuming that a religious exercise under RLUIPA must be sincerely held); *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) ("[RLUIPA]

---

[5] This court has recognized that the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb to 2000bb-4, and First Amendment precedent provides guidance in interpreting RLUIPA. *See Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 661 (10th Cir. 2006). This view is supported by RLUIPA's legislative history. *See* 146 Cong. Rec. 19123 (Sept. 22, 2000) (statement of Rep. Canady) ("Section 3(a) applies the RFRA standard to protect the religious exercise of persons residing in or confined to institutions . . . such as prisons . . . .").

does not preclude inquiry into the sincerity of a prisoner's professed religiosity.").

### a. Mr. Abdulhaseeb believes he should consume a halal-certified diet that includes meats.

There are varying Islamic dietary traditions among Muslims, some more strict than others. According to the Islamic Food and Nutrition Council of America (IFANCA) and Islamic Services of America (ISA), a "halal," or "lawful" diet, prohibits items deemed "haram" (or "unlawful"), including pork and its by-products, animals improperly slaughtered or killed, alcohol and intoxicants, blood and blood by-products, and foods contaminated with haram products. *See* Islamic Food and Nutrition Council of America, *What is Halal?*, http://www.ifanca.org/halal/ (last visited February 26, 2010); Islamic Services of America (ISA), *What is Halal?*, http://www.isaiowa.org/content.asp?ID=1677 (last visited February 26, 2010); *see also Williams*, 343 F.3d at 215. Food containing gelatin, enzymes, and emulsifiers are questionable because of their unclear origins; they may be halal or haram. *See* IFANCA, *What is Halal?*; ISA, *What is Halal?*. Organizations such as IFANCA and ISA offer a certification procedure, by which halal products are marked with a logo that confirms their halal status. *See* IFANCA, *About IFANCA*, http://www.ifanca.org/about/ (last visited February 26, 2010); ISA, *The Certification Process*, http://www.isaiowa.org/content.asp?ID=1680 (last visited February 26, 2010).

The record is not entirely clear as to whether Mr. Abdulhaseeb seeks a halal-certified diet, or simply halal-certified meats as part of a diet that is "halal" in the sense that the foods provided are not "haram." Giving him the benefit of all inferences in his favor at this summary-judgment stage, we proceed on the understanding that he seeks a halal-certified diet that includes halal-certified meats. Thus, this appeal does not involve a request for halal-certified meats in the context of a diet that otherwise is "halal" in the sense of simply not being "haram," and we do not address those circumstances.

The district court held that Mr. Abdulhaseeb had not presented evidence that the OSP vegetarian and pork-free diets forced him to modify or violate his religious beliefs, and noted that other courts have upheld refusals to provide a halal diet. Mr. Abdulhaseeb counters that he sincerely believes that he must eat a halal diet that includes halal meats, a belief that is not satisfied by the OSP's vegetarian and pork-free diets. *See, e.g., Lewis v. Ryan*, No. 04cv2468 JLS (NLS), 2008 WL 1944112, at *19 (S.D. Cal. May 1, 2008) (referring to specific Qur'an passages supporting the belief Islam requires adherence to a diet that includes halal meats); *see also Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 810-11 (8th Cir. 2008) (summarizing a plaintiff's belief that adherence to a halal diet does not allow him to consume *any* meat unless the animal has been slaughtered during a prayer to Allah, and noting that even vegetarian dishes can be "haram").

**b.** **We define "substantial burden" and, proceeding with the RLUIPA analysis, conclude that Mr. Abdulhaseeb has shown a genuine issue of material fact as to substantial burden.**

The standards under RLUIPA are different from those under the Free Exercise Clause. *Kay v. Bemis*, 500 F.3d 1214, 1221 (10th Cir. 2007). "[RLUIPA] defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Id.* (quoting 42 U.S.C. § 2000cc-5(7)(A)); *see also* 42 U.S.C. § 2000cc-3(g) (mandating that RLUIPA "be construed in favor of broad protection of religious exercise"); *Cutter*, 544 U.S. at 725 n.13 ("RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion."); *Grace*, 451 F.3d at 663 (recognizing that the district court erred in requiring the burdened religious activities to be "fundamental"). In considering whether a practice is a "religious exercise," we certainly are not prohibited from referring to standard religious practice or interpretation. *See Levitan v. Ashcroft*, 281 F.3d 1313, 1321 (D.C. Cir. 2002) (stating, in the First Amendment context, that "[a] court may also consider whether the litigants' beliefs find any support in the religion to which they subscribe, or whether the litigants are merely relying on a self-serving view of religious practice. . . . [A] court may determine whether the litigants' views have any basis whatsoever in the creed or community on which they

-22-

purport to rest their claim.").[6]  Contrary to defendants' arguments, however, the issue is not whether the lack of a halal diet that includes meats substantially burdens the religious exercise of any Muslim practitioner, but whether it substantially burdens *Mr. Abdulhaseeb's* own exercise of his sincerely held religious beliefs.[7]

There is no evidence in this record that Mr. Abdulhaseeb does not sincerely hold his expressed beliefs that he should eat a halal diet that includes meats, even though other Muslims may find a vegetarian or non-pork diet sufficient to satisfy Islam.  The defendants apparently do not challenge the religious nature of Mr. Abdulhaseeb's beliefs.  *See Koger v. Bryan*, 523 F.3d 789, 797 (7th Cir.

---

[6]  "In assessing this burden, courts must not judge the significance of the particular belief or practice in question.  RLUIPA bars inquiry into whether [the] belief or practice is 'central' to a prisoner's religion.  RLUIPA does not, however, preclude inquiry into the sincerity of a prisoner's professed religiosity." *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (quotations and citations omitted).

[7]  Neither this court nor defendants are qualified to determine that a non-pork or vegetarian diet *should* satisfy Mr. Abdulhaseeb's religious beliefs.  *See Mosier v. Maynard*, 937 F.2d 1521, 1523 (10th Cir. 1991) ("Intrafaith differences are common and cannot be resolved by secular courts."); *LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991) ("Differing beliefs and practices are not uncommon among followers of a particular creed."); *see also Nelson*, 570 F.3d at 881 ("It simply is not appropriate for a prison official to argue with a prisoner regarding the objective truth of a prisoner's religious belief."); *Sossamon*, 560 F.3d at 333 ("Prison chaplains are not arbiters of the measure of religious devotion that prisoners may enjoy or the discrete way that they may practice their religion."); *Levitan*, 281 F.3d at 1321 (recognizing that the court's inquiry does not require "deciding whether appellants' beliefs accord in every particular with the religious orthodoxy of their church" or "adjudicating intrafaith differences in practice or belief").

2008) (holding that plaintiff's request for a vegetarian diet qualified as a religious exercise because the request stemmed from the plaintiff's practice of Ordo Templi Orientis, not secular concerns); *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007) (stating that "[t]here is no question" that keeping kosher is a religious exercise for purposes of RLUIPA); *see also United States v. Meyers*, 95 F.3d 1475, 1482-83 (10th Cir. 1996) (stating, in enumerating factors relevant to determining whether a belief is religious, that "[r]eligions often prescribe or prohibit the eating of certain foods and the drinking of certain liquids on particular days or during particular times" (quotation omitted)). Therefore, the question before us is whether, in light of Mr. Abdulhaseeb's sincerely held religious beliefs, he has established a genuine issue of material fact whether his religious exercise is substantially burdened by the denial of a halal diet that includes meats. *See Kikumura*, 242 F.3d at 961 (focusing on substantial burden in RFRA case where the plaintiff's request appeared to be a protected religious exercise and the defendants did not challenge the plaintiff's sincerity).

### i. Defining "substantial burden" under § 2000cc-1(a).

Because we have not yet had the opportunity to determine the meaning of the term "substantial burden" in the context of § 2000cc-1(a), we appointed counsel for Mr. Abdulhaseeb and ordered supplemental briefing on the issue. We conclude that a religious exercise is substantially burdened under 42 U.S.C. § 2000cc-1(a) when a government (1) requires participation in an activity

-24-

prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice—an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

We do not believe that the first and second parts of this test require further explanation. The third part, the "substantial pressure" test, stems from the Supreme Court's decisions in *Thomas v. Review Board of Indiana Employment Security Division*, 450 U.S. 707 (1981), and *Sherbert v. Verner*, 374 U.S. 398 (1963), in accordance with Congress's desires that "substantial burden" "should be interpreted by reference to Supreme Court jurisprudence" and that it "is not intended to be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden [on] religious exercise." 146 Cong. Rec. 16698, 16700 (July 27, 2000) (joint statement of Sen. Hatch and Sen. Kennedy). In *Thomas*, the Supreme Court held that

> [w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

450 U.S. at 717-18.  Similarly, in *Sherbert*, the Court stated,

> [h]ere not only is it apparent that appellant's declared ineligibility for benefits derives solely from the practice of her religion, but the pressure upon her to forgo that practice is unmistakable.  The ruling forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand.

374 U.S. at 404; *see also id.* at 406 ("[T]o condition the availability of benefits upon this appellant's unwillingness to violate a cardinal principle of her religious faith effectively penalizes the free exercise of her constitutional liberties.").  We also note that the Court recognized a "coercion" aspect to substantial burden in *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988) ("It is true that this Court has repeatedly held that indirect coercion or penalties on the free exercise of religion, not just outright prohibitions, are subject to scrutiny under the First Amendment.").

While recognizing that RLUIPA's protection extends beyond practices that are central to a religion, we do not intend to imply that every infringement on a religious exercise will constitute a substantial burden.  "The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is important to his free exercise of religion." *Sossamon*, 560 F.3d at 332; *see also Smith*, 502 F.3d at 1278 ("[A]t a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious item or observance was more than an

inconvenience to one's religious practice."); *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004) ("[T]he Supreme Court's express disapproval of any test that would require a court to divine the centrality of a religious belief does not relieve a complaining adherent of the burden of demonstrating the honesty and accuracy of his contention that the religious practice at issue is important to the free exercise of his religion." (footnote omitted)); *Levitan*, 281 F.3d at 1321 (stating, in the First Amendment context, that "a rule that bans a practice that is not 'central' to an adherent's religious practice might nonetheless impose a substantial burden, if the practice is important and based on a sincere religious belief").

### ii. Mr. Abdulhaseeb has shown a genuine issue of material fact as to substantial burden.

Having defined "substantial burden," we now must consider whether Mr. Abdulhaseeb has shown a genuine issue of material fact as to substantial burden. This case comes before us from a grant of summary judgment, in which all reasonable inferences must be construed in favor of the non-movant. In light of that procedural posture and the state of the record, we conclude that there are genuine issues of material fact on the issue of whether the ODOC policy regarding halal foods substantially burdened Mr. Abdulhaseeb's religious exercise at OSP. *See, e.g.*, *Shakur v. Schriro*, 514 F.3d 878, 889 (9th Cir. 2008) (holding that "[t]he extent to which the prison's policies pressured Shakur to betray his

-27-

religious beliefs is another factual dispute to be resolved by the district court."); *Hudson v. Dennehy*, 538 F. Supp. 2d 400, 411 (D. Mass. 2008) (finding, after bench trial, that refusal of halal menu consistent with their beliefs "substantially burdened plaintiffs' exercise of their religious beliefs by creating pressure on plaintiffs to consume meals that do not conform with their understanding of the requirements of Islamic law").

According to Mr. Abdulhaseeb's verified second amended complaint and the attached exhibits, the prison refused his request for a halal diet that included meat. It is a reasonable inference that ODOC's failure to provide a halal diet either prevents Mr. Abdulhaseeb's religious exercise, or, at the least, places substantial pressure on Mr. Abdulhaseeb not to engage in his religious exercise by presenting him with a Hobson's choice—either he eats a non-halal diet in violation of his sincerely held beliefs, or he does not eat. *See Nelson*, 570 F.3d at 879 ("We have held that a prisoner's religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition."); *Shakur*, 514 F.3d at 889 (noting prisoner's argument that the prison's dietary policy forced him into "a Hobson's choice between options that are mutually unacceptable to his practice of his religious faith" (quotation omitted)); *see also Baranowski*, 486 F.3d at 125 (holding that prison's "policy of not providing kosher food may be deemed to work a substantial burden upon [Plaintiff]'s practice of his faith"). In exhausting his administrative remedies,

-28-

Mr. Abdulhaseeb explained this dilemma, stating, "I am forced to do without food or eat food I don't know what ingredients are in it . . . ." R. Doc. 62, Exh. 9, p. 1 of 4. "It is one thing to curtail various ways of expressing belief, for which alternative ways of expressing belief may be found. It is another thing to require a believer to defile himself, according to the believer's conscience, by doing something that is completely forbidden by the believer's religion." *Beerheide v. Suthers*, 286 F.3d 1179, 1192 (10th Cir. 2002) (quotation omitted).

More than one court has held the lack of a halal diet to be a substantial burden on a Muslim's religious exercise. *See Hudson*, 538 F. Supp. 2d at 411; *Thompson v. Williams*, No. C06-5476FDB-KLS, 2007 WL 3244666, at *19 (W.D. Wash. Oct. 31, 2007); *Caruso v. Zenon*, No. 95-MK-1578 (BNB), 2005 WL 5957978, at *12 (D. Colo. July 25, 2005). Other courts have found a genuine issue of material fact as to whether the lack of a halal diet may create a substantial burden. *See Shakur*, 514 F.3d at 889; *Muhammad v. Crosby*, No. 4:05cv193-WS, 2008 WL 2229746, at *15 (N.D. Fla. May 29, 2008); *Lewis*, 2008 WL 1944112, at *29; *Fayson v. Earle*, No. Civ. 04-219-KAJ, 2006 WL 3220062, at *9 (D. Del. Nov. 7, 2006).

And the cases not finding such a burden are clearly distinguishable from our present facts. In *Patel v. United States Bureau of Prisons*, although the Eighth Circuit held that the inmate had not set forth enough evidence to show a substantial burden, there was uncontested evidence that he could consume

-29-

Common Fare kosher non-meat meals and could purchase his own halal commissary meals, and he had not shown that the financial burden would be substantial. 515 F.3d at 814-15; *see also Pratt v. Corr. Corp. of Am.*, 267 F. App'x 482, 482-83 (8th Cir. 2008) (citing *Patel* in finding no substantial burden). In *Watkins v. Shabazz*, 180 F. App'x 773, 775 (9th Cir. 2006), the Ninth Circuit held that there was no substantial burden because defendants gave the inmate two alternatives—eating the nutritionally adequate meat-substitute meals or finding an outside organization to provide halal meat.

Again, unlike the prisoner in *Patel*, Mr. Abdulhaseeb has not been given the opportunity to eat kosher meals; in fact, ODOC policy restricts kosher meals to certain religions, not including Islam. In any event, to the extent that the above-cited cases rely on prisoners being able to purchase or obtain donated halal foods, they are unpersuasive. First, any ability to purchase is chimerical where a plaintiff is indigent, as is Mr. Abdulhaseeb. Second, the record in this case contains an affidavit from the GPCF Chaplain in which he admits that "[a]s regards [Appellant's] request for Halal meals, no Halal vendors have been approved by DOC and policy specifies that such food must be brought in by an approved vendor." R. Doc. 125, Exh. 8 at 2. The reasonable inference is that, at least for some time periods relevant to this action, Mr. Abdulhaseeb could not have purchased halal foods even if he had funds. Finally, in the free exercise context, this circuit has rejected the assertion that Jewish inmates had an

alternative means of practicing their religion by purchasing or obtaining donated kosher foods. "Purchasing meals in the canteen is financially impossible for prisoners of limited means. The Jewish community cannot be expected or required to provide food to the prisoners." *Beerheide*, 286 F.3d at 1187; *see also id.* at 1189 (noting that prisoners had to pay for "essentials such as station[e]ry, telephone calls, medication, medical visits, and clothing," and stating, "[f]orcing prisoners to decide between communicating with family and legal representatives, seeking medical treatment, and following religious tenets constitutes a Hobson's choice rather than a true alternative").

Even with genuine issues of material fact concerning substantial burden, however, it does not necessarily follow that Mr. Abdulhaseeb has established a RLUIPA violation. Rather, the burden of proof shifts to the defendants to show the substantial burden results from a "compelling governmental interest" and that the government has employed the "least restrictive means" of accomplishing its interest. 42 U.S.C. § 2000cc-1(a). Congress "anticipated that courts would apply [RLUIPA's] standard with due deference to the experience and expertise of prison and jail administrators." *Cutter*, 544 U.S. at 723 (quotation omitted). "At the same time, however, inadequately formulated prison regulations and policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet the act's requirements." 146 Cong. Rec. 16698, 16699 (July 27, 2000) (joint statement of Sen. Hatch and Sen. Kennedy) (quotation omitted).

-31-

On appeal, the OSP Defendants and ODOC Defendants argue that providing a halal diet that includes meat "would have been cost-prohibitive and unreasonably time-consuming.  Reducing costs, streamlining its food production, limiting the number of required staff, maintaining consolidation of its vendors, and preventing security risks are compelling justifications under the RLUIPA." ODOC Aplee. Br. at 39.  One or more of these interests may well qualify as a "compelling governmental interest."  *See Sossamon*, 560 F.3d at 334 ("Texas obviously has compelling governmental interests in the security and reasonably economical operation of its prisons . . . ."); *Lovelace v. Lee*, 472 F.3d 174, 189 (4th Cir. 2006) ("[T]he policy's burdens or restrictions could be justified by compelling considerations of security or good order."); 146 Cong. Rec. 16698, 16699 (July 27, 2000) (joint statement of Sen. Hatch and Sen. Kennedy) (mentioning good order, security, discipline, costs, and limited resources); *but see Mem'l Hosp. v. Maricopa County*, 415 U.S. 250, 263 (1974) (rejecting cost as a compelling governmental interest sufficient to justify penalizing the right to travel to and settle in another state).  In this appeal, however, we need not decide whether these interests satisfy the RLUIPA standard, because there simply is no record evidence regarding the defendants' contentions.  *See Beerheide*, 286 F.3d at 1189 (noting, in the constitutional context, "[i]n order to warrant deference, prison officials *must present credible evidence* to support their stated penological goals"); *see also Shakur*, 514 F.3d at 891 (reversing and remanding a district

-32-

court's summary disposition of Plaintiff's claims based on a sparse factual record, stating, "the record is not sufficiently developed to ascertain the precise weight that cost should be afforded"); *Lovelace*, 472 F.3d at 190-92 (refusing to hold that asserted interests were compelling as a matter of law given government's failure to present evidence). Further, there has been no discussion of whether refusing to provide a halal-certified diet is the least restrictive means which the state can employ to satisfy its interests. *See Lovelace*, 472 F.3d at 192 (holding "[t]here is no basis in this case for a court . . . to declare the least restrictive means test satisfied without any substantive explanation from prison officials"); *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 989 (8th Cir. 2004) ("It is not clear that [the prison system] seriously considered any other alternatives, nor were any explored before the district court.").

"On this record, where there is factual dispute as to the extent of the burden on [Plaintiff's] religious activities, the extent of the burden that would be created by accommodating [Plaintiff's] request, and the existence of least restrictive alternatives, we cannot conclude that summary judgment on the RLUIPA claim was appropriate." *Shakur*, 514 F.3d at 891. Accordingly, we remand Mr. Abdulhaseeb's RLUIPA Claim 10 for further proceedings against the ODOC Defendants and the OSP Defendants in their official capacities.[8]

---

[8]      There is no indication that the GPCF Defendants or the Canteen Defendants

(continued...)

-33-

**3.    For purposes of avoiding summary judgment on his Claim 5, Mr. Abdulhaseeb adequately demonstrated a genuine issue of material fact whether the denial of halal meat for an Islamic feast substantially burdened his religious exercise.**

Claim 5 alleges that the defendants violated RLUIPA when they refused

Mr. Abdulhaseeb's request to serve halal meat for the January 2005 Eid-ul-Adha

(the Feast of the Sacrifice).  The district court held that

> [Mr. Abdulhaseeb] does not provide any evidence that Halal meat is necessary to celebration of the Feast, or even that failure to celebrate the Feast itself would substantially burden his religious exercise. Furthermore, ODOC policy allows food for festive or ceremonial meals to be purchased by the faith community or donated, and for the meals to be eaten together by the faith community.

R. Doc. 137 at 69.  We disagree with the district court's analysis.

Mr. Abdulhaseeb's verified second amended complaint describes the

Eid-ul-Adha feast as "an Islamic [h]oliday that is central to Islamic beliefs and

practices." *Id.* Doc. 62, Count V; *see also id.* Doc. 78, Attach. 27-D at 2 (April 1,

2003, ODOC addendum to "Religious Programs" policy listing Eid feasts as

occasions on which Muslim inmates must abstain from work or participate in a

religious service at a specific time).  While he does not specifically express why

halal meat is desirable for Eid-ul-Adha feast, it is a reasonable inference from this

record that he wishes to observe a halal diet for both feast and non-feast days, and

_____

[8](...continued)
had any involvement in the events underlying Claim 10 or the implementation of ODOC's policy regarding halal foods at OSP.  Accordingly, we affirm the grant of summary judgment to those defendants on Claim 10.

that halal meat is important to this feast, *see id.* Doc. 78, Attach. 27-D at 3 (April 1, 2003, ODOC addendum to "Religious Programs" policy listing sweets and halal meats as having religious significance for Eid feasts). If an inability to eat proper foods for a religious holiday prevents one from engaging in conduct motivated by a sincerely held religious belief or forces one to engage in conduct prohibited by a sincerely held religious belief, it may constitute a substantial burden. *See Ford v. McGinnis*, 352 F.3d 582, 593-94 (2d Cir. 2003); *see also Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1211-13 (10th Cir. 1999) (discussing the spiritual importance of the Ramadan fast); *Meyers*, 95 F.3d at 1482-83 (noting, in enumerating factors relevant to determining whether a belief is religious, that "[r]eligions often prescribe or prohibit the eating of certain foods and the drinking of certain liquids on particular days or during particular times" (quotation omitted)); 146 Cong. Rec. 14283, 14284 (July 13, 2000) (statement of Sen. Hatch) (stating that "some Jewish prisoners have been denied matzo, the unleavened bread Jews are required to consume during Passover"). We believe that the district court erred in not giving Mr. Abdulhaseeb the benefit of these inferences in its summary judgment analysis.

Further, as discussed above, ODOC's policy is that halal meats and sweets for feasts can be purchased from *approved* vendors or donated. The record contains an affidavit from the then-GPCF Chaplain in which he admits that "[a]s regards [Appellant's] request for Halal meals, no Halal vendors have been

-35-

approved by DOC and policy specifies that such food must be brought in by an approved vendor." R. Doc. 125, Exh. 8 at 2. To the extent that there were or may have been periods when there are no approved halal vendors, the district court erred in holding that an ability to purchase halal meats translates into no substantial burden on a Muslim inmate's religious exercise.

A reasonable jury could determine that ODOC prevented Mr. Abdulhaseeb from consuming halal meats as part of his celebration of the Eid-ul-Adha in 2005, and therefore substantially burdened his religious exercise. Thus, we must remand this claim for further proceedings against the GPCF Defendants and the ODOC Defendants in their official capacities.[9]

**D.      The district court correctly granted summary judgment to the defendants on the remainder of Mr. Abdulhaseeb's claims.**

**1.      Defendants were entitled to summary judgment on the remaining RLUIPA claims.**

Mr. Abdulhaseeb's second amended complaint included six other exhausted claims under RLUIPA. For the following reasons, we agree with the district court that defendants are entitled to summary judgment on each of those claims.

We first address the RLUIPA claims involving events at OSP. In Claim 11, Mr. Abdulhaseeb alleges that ODOC's policy of spending money for secular

---

[9]      There is no indication that the Canteen Defendants or the OSP Defendants had any involvement in the events underlying Claim 5 or the implementation of ODOC's policy regarding halal foods at GPCF. Accordingly, we affirm the grant of summary judgment to those defendants on Claim 5.

-36-

needs, not religious needs, violates RLUIPA. In Claim 12, he contends that RLUIPA requires ODOC to pay a Muslim spiritual leader. And in Claim 13, he complains that ODOC's policy of not paying for soft-cover Islamic books for prisoners who cannot keep their hardback Islamic books violates RLUIPA. The district court held that RLUIPA requires governments to refrain from substantially burdening religion, not to affirmatively subsidize religion. We agree. *See* 42 U.S.C. § 2000cc-3(c) ("*Nothing in this chapter shall create . . . a right of any religious organization to receive funding or other assistance from a government, or of any person to receive government funding for a religious activity*, but this chapter may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise.") (emphasis added); *Cutter*, 544 U.S. at 720 n.8 ("Directed at obstructions institutional arrangements place on religious observances, RLUIPA does not require a State to pay for an inmate's devotional accessories."); *Mayweathers v. Newland*, 314 F.3d 1062, 1068-69 (9th Cir. 2002) (holding RLUIPA constitutional under the Establishment Clause because "[i]t does not impose affirmative duties on states that would require them to facilitate or subsidize the exercise of religion"); *see also Werner*, 49 F.3d at 1480 ("[RFRA] need not drive a prison to employ clergy from every sect or creed found within its walls."). The district court appropriately granted summary judgment to the defendants on the RLUIPA aspect of Claim 11 and on Claims 12 and 13.

The remaining three RLUIPA claims concern events at GPCF. Claim 1 alleges that defendants violated RLUIPA by failing to provide a full-time paid Muslim spiritual leader. As we have just stated, RLUIPA does not oblige a government to affirmatively subsidize religion. Summary judgment was appropriate on Claim 1 on that ground.

Claim 2 alleges that defendants violated RLUIPA by forcing Mr. Abdulhaseeb to accept on his food tray jello and pudding, which he considered to be questionable at best and contaminated with pork products at worst. The district court held that he failed to show a substantial burden on his religious exercise. We agree.

We accept Mr. Abdulhaseeb's contentions that the jello and pudding were questionable at best, and thus placing them on his tray rendered all the food on the tray contaminated and inedible for him. We are not willing to conclude, however, that every single presentation of a meal an inmate considers impermissible constitutes a substantial burden on an inmate's religious exercise. *See Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (characterizing the unavailability of pork-free meals on three out of 810 occasions as a "de minimis burden"). Although we assume that as the frequency of presenting unacceptable foods increases, at some point the situation would rise to the level of a substantial burden, we need not decide that question. In this case, the record contains evidence of one specific incident of Mr. Abdulhaseeb purportedly being forced to

accept jello and pudding on his tray. Otherwise, he submits only general allegations that the practice continues. "The purpose of a summary judgment motion, unlike that of a motion to dismiss, is to determine whether there is evidence to support a party's factual claims. Unsupported conclusory allegations thus do not create a genuine issue of fact." *L&M Enter., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000). By identifying only one occasion when he was forced to accept the objectionable products and failing to provide any other specific evidence to support his Claim 2 allegations, Mr. Abdulhaseeb failed to establish a genuine issue of material fact as to substantial burden, and thus summary judgment was appropriate.

In Claim 4, Mr. Abdulhaseeb argues that the defendants violated RLUIPA by failing to host an Islamic revival, while hosting a Christian revival. Mr. Abdulhaseeb lists several benefits to him from participating in an Islamic revival, but as the district court held, there is no evidence that the defendants' failure to host a revival substantially burdened his religious exercise. We affirm the grant of summary judgment to defendants on this claim.

## 2. Defendants were entitled to summary judgment on the § 1983 claims.

Several of Mr. Abdulhaseeb's claims appeared to invoke constitutional issues such as the Establishment Clause and the Free Exercise Clause, and in an abundance of caution the district court analyzed them as constitutional claims in

addition to RLUIPA.  Further, in Claim 11 of his second amended complaint Mr. Abdulhaseeb specifically invoked his constitutional rights to equal protection and the free exercise of his religion.  The district court found no constitutional violations with regard to any of his claims.

It appears that Mr. Abdulhaseeb has not appealed the analyses arising out of the district court's abundance of caution (he states on appeal that his religious claims were brought under RLUIPA, not § 1983).  Thus, we do not consider those rulings.  To the extent that he has appealed the free exercise portion of Claim 11, we affirm for substantially the reasons stated in the magistrate judge's report and recommendation.

With regard to the equal protection portion of Claim 11, we affirm for reasons other than those stated in the magistrate judge's report and recommendation.  Claim 11, as pleaded in the Second Amended Complaint, complains that ODOC spends money on nonreligious items but not religious ones. In arguing the claim, Mr. Abdulhaseeb briefly asserted that ODOC provides Jewish inmates with kosher meals, but refuses to provide Muslim inmates with halal meals.  It appears that the district court addressed this argument as a separate claim, granting summary judgment on the ground that "Plaintiff does not allege treatment stemming from his membership in a suspect class, and he has not submitted any evidence to show that other groups of similarly-situated inmates received different or better treatment than he did."  R. Doc. 137 at 61.  We

disagree that judgment would be proper on this basis, had Mr. Abdulhaseeb actually asserted a claim contrasting the treatment of Jewish inmates and Muslim inmates.[10]  But he did not assert that claim, and we shall not reverse the district court's disposition of the claim he actually did assert.

Finally, Claim 3 alleges that Mr. Abdulhaseeb's constitutional right to equal protection was violated because the defendants refused to amend his visitor list to include more than one friend.  As the district court concluded, Mr. Abdulhaseeb's support for this claim consisted merely of vague and conclusory allegations, without any specific facts, that white inmates were treated more favorably.  Accordingly, summary judgment in favor of defendants was appropriate.  *See L&M Enter., Inc.*, 231 F.3d at 1287.

---

[10]　　Equal protection "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Religion is a suspect classification.  *See United States v. Batchelder*, 442 U.S. 114, 125 n.9 (1979) ("The Equal Protection Clause prohibits selective enforcement based on an unjustifiable standard such as race, religion, or other arbitrary classification." (quotation omitted)); *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam) (listing religion as an example of an "inherently suspect distinction[]"); *see also Colo. Christian Univ. v. Weaver*, 534 F.3d 1245, 1257 (10th Cir. 2008) ("From the beginning, this nation's conception of religious liberty included, at a minimum, the equal treatment of all religious faiths without discrimination or preference.").  In a previous case involving this appellant, we stated, "[a]ll appellant must allege to properly state an equal protection claim is that he was personally denied equal treatment on the basis of his religion."  *Abdulhaseeb v. Saffle*, 65 F. App'x 667, 673 (10th Cir. 2003).  In that case, we reversed a grant of summary judgment and the dismissal of claims where the district court had determined that Mr. Abdulhaseeb had not shown that he was deprived of prison opportunities because of a suspect classification.  *Id.* at 673-75.

### III. CONCLUSION

We AFFIRM the grant of summary judgment to all defendants on Claims 1, 2, 3, 4, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, and 17. The only remaining claims are Claims 5 and 10. With regard to these claims, we AFFIRM the grant of summary judgment to the OSP Defendants and the Canteen Defendants on Claim 5, and to the GPCF Defendants and the Canteen Defendants on Claim 10. We VACATE the grant of summary judgment and REMAND for further proceedings, consistent with this opinion, with regard to Claim 5 against the GPCF Defendants and the ODOC Defendants, all in their official capacities, and with regard to Claim 10 against the OSP Defendants and the ODOC Defendants, all in their official capacities. We request that the district court appoint counsel for Mr. Abdulhaseeb for the remand proceedings. Mr. Abdulhaseeb's motion to proceed in forma pauperis is GRANTED, and he is reminded of his obligation to continue making partial payments until the entire balance of his appellate filing fee is paid.

APPENDIX

According to the record, ODOC Policy OP-030112, effective June 26, 2002, stated in relevant part:

VII.    Foods for Special Religious Ceremonies

    1.    *All religious restricted meals will be offered through a common pork-free or meat free meal.*  No religious test will be applied for religious meals. . . .

    2.    Menus for approved festive religious meals will be taken from the standard menu served to the rest of the inmate population that day, unless specific food restrictions are required by the faith such as a pork-free meal.

R. Doc. 78, Attach. 27-A at 6 (emphasis added).  The policy was amended effective April 1, 2003, to add the following language:

    D.    No special accommodations will be made for Religious Feasts and Festive meals except as follows:

        a.    Where program space and security level allows, inmates who are celebrating a recognized religious feast or festive meal will be able to eat their meal together as a faith community.  The food will be the same as that which is served to the rest of the general population for that meal.

        b.    *Foods that have a verifiable religious significance may be donated by an outside religious organization or purchased by the inmate from an authorized vendor for ceremonial meals.*  Foods purchased by an individual inmate will be for that inmate's use only.  Foods purchased by a faith group may be shared among the group.  The religious significance must be verified by the faith group's sacred text and outside religious authority.  All donations or purchases must be arranged through the facility Chaplain and approved by the facility head or their designee.  . . .  The following faiths have established religious significance for specific foods:

            . . .

-43-

ii.    Muslim – Dates (a traditional fruit) for the month of Ramadan, Sweets and *Hallal Meats* for the Eid celebrations.

. . .

*Id.*, Attach. 27-D at 3 (emphasis added).

The policy again was revised on December 29, 2004. *See id.*, Attach. 27-E. The religious diet language was moved to Section VI, but the other changes are not material to the issues before this court.

Effective December 5, 2005, ODOC began offering a kosher meal option, and revised the policy to state in Section VI.A.:

*All religious restricted meals will be offered through a common pork-free or meat free meal or kosher diet. The kosher diet will be provided only to inmates that demonstrate that their religious faith mandates compliance with a kosher diet.* An inmate who wishes to receive one of these diets for religious reasons must submit a "Religious Diet Request Form" . . . to the facility chaplain.

*Id.*, Attach. 27-G at 1 (emphasis added). The required "Religious Diet Request Form" provided that religious diet requests "must be verified by religious officials from the specified faith group. Religious officials must verify that the inmate meets the requirements of the faith group to be recognized as a member and that the faith group requires a special religious diet." *Id.* at 2.

The policy again was amended in April 2006, *see id.*, Attach. 27-H, but those changes are not relevant to the issues on appeal.

08-6092, *Abdulhaseeb v. Calbone*

**GORSUCH**, Circuit Judge, concurring.

The court today holds that the Religious Land Use and Institutionalized Persons Act (RLUIPA) prohibits the government from forcing a prisoner to choose between following his sincerely held religious beliefs and staying alive. With this, I agree. I write only to clarify what the court does *not* hold but instead entrusts to future panels to decide.

RLUIPA prohibits the government from creating a substantial burden on a prisoner's sincerely held religious beliefs. As the panel opinion notes, the defendants in this case do not contest the religiosity or the sincerity of Mr. Abdulhaseeb's beliefs. *See* Maj. Op. at 23-24. Accordingly, we have no opportunity to decide when a prisoner's beliefs qualify as religious or when they are sincerely held. The only question before the court is whether the government has imposed a substantial burden. In evaluating that question, we will say that

> a religious exercise is substantially burdened under 42 U.S.C. § 2000cc-1(a) when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice — an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

Maj. Op. at 24-25.

In evaluating whether Mr. Abdulhaseeb has satisfied that test, we have struggled to ascertain the exact parameters of his *pro se* complaint. Claim 10, for example, obviously concerns his daily diet, but it's fairly susceptible of at least three possible interpretations: (1) Mr. Abdulhaseeb can only eat food that is expressly certified halal by an Islamic authority, much as some members of the Jewish faith may eat only certified kosher food, and nothing provided by the Oklahoma Department of Corrections (ODOC) or available for purchase from approved vendors meets that standard; (2) he can eat any food that isn't haram (that is, explicitly forbidden), but the periodic (or sporadic) placement of questionable foods, such as jell-o and pudding, onto his cafeteria tray renders all of the tray's contents haram and thus inedible; or (3) he can, consistent with his religion, eat the non-haram vegetarian diet provided by ODOC, but also has a religious obligation to eat halal meat with some unspecified level of frequency, yet such meat is neither provided nor available from approved vendors.

As both the summary judgment non-movant and a *pro se* litigant, Mr. Abdulhaseeb deserves the benefit of the doubt. Accordingly, we charitably interpret Claim 10 to allege only the first, most troublesome scenario — that Mr. Abdulhaseeb requires a halal-certified diet that he is not currently receiving and that ODOC has provided no means for him to procure for himself. Or, put another way, that he has been forced to choose between violating his religious

beliefs and starving to death. Whatever else might be said about RLUIPA, redressing this sort of Hobson's choice surely lies at its heart.

The choice posed to Mr. Abdulhaseeb puts him in a similar (if more dire) position as the petitioners in *Sherbert v. Verner*, 374 U.S. 398 (1963), and *Thomas v. Review Board*, 450 U.S. 707 (1981), two cases that the Supreme Court abrogated in *Employment Division v. Smith*, 494 U.S. 872 (1990), and that Congress sought to resurrect when it passed RLUIPA. *See* Maj. Op. at 25; *cf. Cutter v. Wilkinson*, 544 U.S. 709, 714-17 (2005). In both cases, the Supreme Court found First Amendment violations when the government denied unemployment benefits to religious adherents because they followed their beliefs. "[A] burden upon religion exists," the Court told us, "[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief." *Thomas*, 450 U.S. at 717-18. To say that access to edible food qualifies as "an important benefit" is to put it mildly, and Mr. Abdulhaseeb's Claim 10 thus falls squarely within the *Sherbert-Thomas* prohibition.

We evaluate Mr. Abdulhaseeb's other RLUIPA claims under the same framework. Claim 5 asserts that ODOC failed to approve any Muslim food vendors and thus prevented Mr. Abdulhaseeb from purchasing the halal meat he allegedly required for a mandatory and significant religious holiday. This claim satisfies the standard for a triable RLUIPA claim because the jury could, even if it

-3-

need not necessarily, find that the restrictions rendered Mr. Abdulhaseeb's religious exercise — the celebration of a mandatory holiday — impossible. Claim 2, on the other hand, doesn't meet that threshold. By alleging that ODOC sporadically placed questionable foods, such as jell-o and pudding, onto his cafeteria tray, thus rendering all of the tray's contents inedible, Mr. Abdulhaseeb has described only a moderate impediment to — and not a constructive prohibition of — his religious exercise. It's surely a burden to forgo an occasional meal. But it's not a *substantial* burden, and RLUIPA proscribes only government actions that *substantially* burden religious exercise.

The resolution of Mr. Abdulhaseeb's RLUIPA claims still leaves many questions unanswered. In particular, we do not address the third possible interpretation of Claim 10. We thus have no opportunity to consider whether a prisoner who may eat ODOC's vegetarian diet but who is denied any access to halal-certified meats can state a RLUIPA claim. And we certainly do not suggest that RLUIPA requires the state to provide prisoners — even indigent prisoners — with everything they need for religious purposes. *See Cutter*, 544 U.S. at 720 n.8 ("RLUIPA does not require a State to pay for an inmate's devotional accessories."). This case compels us to address only whether prison officials can violate RLUIPA by denying an inmate in their charge all means of accessing food he can eat consistent with his (uncontested) sincerely held religious beliefs — thus effectively forcing him to choose between remaining pious or starving. We

hold that RLUIPA does indeed apply in these circumstances.  Whether and to what extent the statute goes further is a question for another day.