FILED
United States Court of Appeals
Tenth Circuit

December 13, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHAD WILLIAM REED,

     Plaintiff - Appellant,

v.

JASON BRYANT; KELLY CURRY;
LAWRENCE BELL, MD - Doctor of
Medicine; ROWENNA BELL; JAY
DRAWBRIDGE,

     Defendants - Appellees.

No. 17-6082
(D.C. No. 5:16-CV-00461-C)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK** and **HOLMES**, Circuit Judges.
_____

This case arises from a decision by Oklahoma prison authorities to suspend

state prisoner Chad William Reed from the kosher diet program in which he had

participated for several years. He was suspended pursuant to an Oklahoma

Department of Corrections (ODOC) policy that requires suspension if an inmate

participating in a religious diet program consumes or possesses food not included in

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the religious diet. This type of policy is sometimes referred to as a "zero-tolerance rule." Mr. Reed, acting pro se, brought this action under 42 U.S.C. § 1983, alleging the defendant prison officials violated numerous constitutional provisions and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1 to -5, by enforcing the ODOC policy against him, falsely accusing him of violating the policy, and in taking other, related actions. The district court granted Defendants' motion to dismiss Mr. Reed's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and denied his motions for discovery and for leave to amend. Mr. Reed appeals the denial of his motions and the judgment entered against certain of his claims.

Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand this action to the district court. We conclude:

- The district court should have addressed Mr. Reed's claim that ODOC's zero-tolerance rule violates his procedural due process rights. We remand this claim to the district court for further proceedings under the appropriate legal standards.

- The district court should not have granted summary judgment against Mr. Reed's RLUIPA challenge to the zero-tolerance rule. A zero-tolerance rule that requires suspension of inmates who are falsely or mistakenly accused of violating the zero tolerance rule can impose a substantial burden on an inmate's sincerely held religious beliefs. And the government bears the burden of demonstrating the regulation satisfies strict scrutiny. We remand this claim for further proceedings against the relevant defendants in their official capacities.

## BACKGROUND

Unless otherwise noted, the facts recited in this decision are drawn from Mr. Reed's complaint and are assumed to be true for purposes of our de novo review of the district court's rulings on the claims at issue. *See, e.g.*, *SEC v. Shields*,

2

744 F.3d 633, 640 (10th Cir. 2014).  We also limit this discussion to the facts relevant to the issues before us.

Mr. Reed is an Oklahoma state inmate confined at the James Crabtree Correctional Center (JCCC), an ODOC facility.  Mr. Reed is Jewish, and had been enrolled in the kosher diet program at JCCC for approximately five years before the events giving rise to this action.  The JCCC operates this program pursuant to the ODOC's Religious Diet Policy, which states that the ODOC will provide a kosher or halal diet to an inmate who requests it if, among other things, he signs an agreement that he "will not consume or possess any food that is not consistent with the diet requested."[1]  R. Vol. I, at 113; *see also id.* at 102-03.  Under the policy, an inmate who violates this requirement is automatically suspended from the religious diet program for 30 days for the first violation, 120 days for the second violation and for one year for every subsequent violation.  This type of provision in a prison's religious diet program is sometimes referred to as a "zero-tolerance rule."  The ODOC's Religious Diet Policy, including the zero-tolerance rule, is administered and enforced by the prison chaplain.

On December 17, 2015, JCCC kitchen manager Rowena Bell accused Mr. Reed of using another inmate's meal card to obtain a non-kosher breakfast tray, and refused to provide him with a kosher breakfast tray on this basis.  Mr. Reed

---

[1]  We may consider ODOC's Religious Diet Policy in evaluating Defendants' motion to dismiss because Mr. Reed references the policy in his complaint, it is central to several of his claims, and the parties have not disputed its authenticity.  *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

3

adamantly denied that he had taken a non-kosher tray and requested that the captain on shift save and review the "chow hall video," which Mr. Reed claimed would disprove Ms. Bell's accusation. Mr. Reed also asked JCCC chaplain Jay Drawbridge to review the chow hall video to assess whether Ms. Bell's accusation was true. In spite of his protestations and requests, the prison did not investigate Mr. Reed's complaints or provide him with an opportunity to dispute Ms. Bell's account. Instead, shortly after the incident, pursuant to ODOC's zero-tolerance rule, chaplain Drawbridge suspended Mr. Reed from his kosher diet for 120 days based on an Incident Report submitted by Ms. Bell's supervisor, Kelly Curry, that recounted Ms. Bell's report that Mr. Reed had taken a non-kosher meal tray.[2] JCCC officials also rejected on procedural grounds the many emergency and standard grievances and grievance appeals Mr. Reed submitted after his suspension regarding the incident and related matters, and then placed him on grievance restriction.[3]

Mr. Reed asserts Ms. Bell falsely accused him of violating the zero-tolerance rule as a result of a heated conversation he had with Ms. Curry a few days before the

---

[2] Mr. Reed had been suspended under the zero-tolerance rule once before, and filed suit at that time challenging the suspension on the ground that it violated RLUIPA and infringed on various constitutional rights. *See* R. Vol. I, at 19; *id.* Vol. II, at 6-7. Mr. Reed's suit was dismissed for failure to exhaust administrative remedies. *See* R. Vol. I, at 19; *id.* Vol. II, at 7.

[3] Defendants moved to dismiss Mr. Reed's claims pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies, but the magistrate judge recommended that this motion be denied. R. Vol. II, at 6 n.1. The district court adopted this recommendation in adopting the magistrate judge's Report and Recommendation. *See id.* at 99-100.

incident. In that conversation, Mr. Reed threatened to sue Ms. Curry for discrimination if she did not provide him and other religious diet participants with a special meal on the upcoming holiday as she did for other inmates. Ms. Curry responded, "Well [we] will just see about that." *Id.* at 10 (internal quotation marks omitted). Mr. Reed alleges Ms. Curry then retaliated against him by conspiring with Ms. Bell to get him suspended from his religious diet before the holiday, thereby heading off the threatened suit, and that this was the impetus for Ms. Bell falsely accusing him of taking a non-kosher breakfast tray.

Mr. Reed, acting pro se, filed suit against JCCC chaplain Drawbridge, Ms. Curry and Ms. Bell, JCCC Warden Jason Bryant and the captain on shift when Ms. Bell made her accusation based on these and some related events. As relevant to this appeal, Mr. Reed asserted claims challenging the ODOC's zero-tolerance rule on the ground that it violated his constitutional right to due process and his rights under RLUIPA, as well as First Amendment claims against Defendants Bell and Curry, in their individual capacities, for conspiring to retaliate against him and causing him to be suspended without justification from the prison's religious diet program. Mr. Reed sought damages, a declaratory judgment that his rights had been violated, and prospective injunctive relief.

The district judge referred the matter to a magistrate judge, who issued an order barring discovery and directing Defendants to prepare a Special Report in compliance with the guidelines set out in *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (per curiam). Defendants filed the Special Report and the next day filed a

5

motion to dismiss under Rule 12(b)(6) that did not reference or attach the Report or any other external material. After Mr. Reed filed his response, the magistrate judge issued a Report and Recommendation in which he construed Defendants' motion to dismiss in part as a motion for summary judgment and recommended that all of Mr. Reed's claims be disposed of either by dismissal or entry of summary judgment.

Shortly after Mr. Reed received the magistrate's report and recommendation, he filed a Rule 56(f) motion for a continuance to allow discovery (to obtain the chow hall video and other evidence relevant to his false accusation allegations) and a motion for leave to amend his complaint. Subsequently he timely filed objections to the magistrate judge's report and recommendation.

The district court adopted the magistrate judge's report and recommendation. In the order adopting the magistrate judge's recommendation, the district court also struck Mr. Reed's motion for continuance and discovery as moot, on the ground that "[t]he proper time for discovery requests has passed," and denied his motion for leave to amend on the ground that the proposed amendment failed to cure the deficient claims identified in the magistrate judge's report. R. Vol. II, at 99-100. This appeal followed.

## DISCUSSION

Because Mr. Reed is proceeding pro se, we must construe his pleadings and arguments liberally, notwithstanding any "failure to cite proper legal authority, his confusion of various legal theories" or the like. *Hall v. Bellmon*, 935 F.2d 1106,

6

1110 (10th Cir. 1991); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009). We do not, however, serve as his advocate. *Hall*, 935 F.2d at 1110.

Reading Mr. Reed's pro se brief liberally, he raises three issues on appeal: (1) whether the district court erred in entering summary judgment against his claim that ODOC's zero-tolerance rule violates his procedural due process rights and right to practice his religion under RLUIPA; (2) whether the district court erred in denying his motions for a continuance and discovery; and (3) whether the district court abused its discretion in denying his motion for leave to amend his complaint.[4] We examine each issue in turn.

A. Claim challenging ODOC's zero-tolerance rule

In his complaint, Mr. Reed sought prospective injunctive relief against ODOC's zero-tolerance rule on the ground that it violated the First Amendment's Establishment Clause, the Due Process Clauses of the Fifth and Fourteenth Amendments, and RLUIPA. In support of his RLUIPA challenge, he referenced several cases, including *United States v. Secretary, Florida Department of Corrections*, No. 12-22958-CIV, 2015 WL 1977795 (S.D. Fla. Apr. 30, 2015) (unpublished), *aff'd on other grounds*, 828 F.3d 1341 (11th Cir. 2016), in which the court enjoined a similar zero-tolerance rule upon finding that it violated RLUIPA, *id.*

---

[4] Mr. Reed asserted many other claims in his complaint, but did not address the district court's disposition of them in his opening brief. As a result, he forfeited the right to challenge these district court rulings on appeal. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[O]mission of an issue in an opening brief generally forfeits appellate consideration of that issue.").

at *11-12.  On appeal, Mr. Reed has narrowed his argument, contending that the district court failed to address his claim that the ODOC rule deprived him of his constitutional right to procedural due process and that the rule violated RLUIPA as found in *Florida Department of Corrections*.

### 1. Procedural due process

Mr. Reed is correct that Defendants and the district court did not address his claim that ODOC's zero-tolerance rule deprived him of procedural due process in violation of the Fourteenth Amendment.[5]  To prevail on this claim, Mr. Reed must ultimately show that:  (1) his interest in maintaining a kosher diet is a liberty or property interest protected under the Due Process Clause; and (2) he was not afforded a constitutionally adequate level of process.  *See Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011).  Here, Mr. Reed is asserting a liberty interest because he alleges that his kosher diet suspension and the zero-tolerance rule on which it was based violated his First Amendment right to freely exercise his religion.

A protected liberty interest "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies."  *Wilkinson v. Austin*, 545 U.S. 209, 221

---

[5]  The Fourteenth Amendment is the source of the States' constitutional obligation to provide an individual with procedural due process before depriving them of their life, liberty or property.  *See McBeth v. Himes*, 598 F.3d 708, 723 (10th Cir. 2010).

8

(2005) (citations omitted).[6] Constitutional rights provided by the First Amendment are liberty interests under the Due Process Clause. *See Procunier v. Martinez*, 416 U.S. 396, 417 (1974) (holding that a prisoner interest grounded in the First Amendment "is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment"), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989); *see also Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997) (stating Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests[,] . . . [including] the specific freedoms protected by the Bill of Rights"). If a liberty interest is established, then the adequacy of the prison's procedures is assessed by balancing three factors: (1) the private interest affected by the government action; (2) "'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'"; and (3) the State's interest, "'including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Wilkinson*, 545 U.S. at 224-25 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

---

[6] While state laws and policies can give rise to a protected liberty interest in avoiding particular conditions of confinement in prisons, such state-derived rights are generally "limited to freedom from restraint [that] . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 222-23 (internal quotation marks omitted); *see also Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012).

9

Because the district court did not address Mr. Reed's procedural due process challenge to ODOC's zero-tolerance rule, we remand this claim to the district court for further proceedings under these standards.

### 2. RLUIPA

Mr. Reed is also correct that the district court did not discuss the authority Mr. Reed referenced in his complaint and his response to Defendants' motion (and in his objections to the magistrate judge's report) in support of his RLUIPA challenge to ODOC's zero-tolerance rule. Contrary to his assertion, however, the magistrate judge did address this claim and recommended that summary judgment be entered against it. R. Vol. II, at 31-32.

In the RLUIPA claim, Mr. Reed seeks prospective injunctive relief against the zero-tolerance rule on the ground that it violates RLUIPA. Such a claim may be brought against individual prison officials in their official capacities. *See Yellowbear v. Lampert*, 741 F.3d 48, 53 n.1 (10th Cir. 2014). To prevail on this claim, Mr. Reed must demonstrate that the ODOC's zero-tolerance religious diet rule substantially burdens his sincerely held religious beliefs. *See* 42 U.S.C. § 2000cc-1(a). If Mr. Reed makes this showing, then the burden shifts to Defendants to show that the burden imposed by enforcement of the policy (1) serves a "compelling governmental interest" and (2) "is the least restrictive means of furthering that compelling governmental interest." *Id.*; *see also Yellowbear*, 741 F.3d at 56.

The district court found ODOC's zero-tolerance rule did not run afoul of RLUIPA because (1) temporary suspension of Mr. Reed's kosher meals pursuant to

10

the rule did not substantially burden his sincerely held religious beliefs, either as a matter of law or because a reasonable jury could not so find; and (2) even if the suspension did substantially burden Mr. Reed's sincere religious beliefs, this burden "further[ed] legitimate and compelling penological interests." R. Vol. II, at 31-32.

We disagree with this assessment, for several reasons. First, this court has long held that prisoners have the right under the First Amendment and RLUIPA to a diet that conforms to their sincerely held religious beliefs. *See Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002) (First Amendment); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1314-15 (10th Cir. 2010) (RLUIPA). It is also well established that depriving a prisoner of a religious diet he has requested pursuant to his sincerely held religious beliefs at minimum creates a triable issue of fact on whether this constitutes a substantial burden on the inmate's religious exercise.[7] In *Abdulhaseeb*, we considered this issue in the context of deciding whether ODOC's failure to provide a Muslim inmate with a halal diet as requested presented a genuine issue of material fact regarding substantial burden under RLUIPA. 600 F.3d at 1312-20. After defining what constitutes a substantial burden under the statute,[8] we held that failing

---

[7] Defendants do not contest that Mr. Reed requested a kosher diet pursuant to his sincerely held religious beliefs.

[8] We determined that:

> a religious exercise is substantially burdened under [RLUIPA] when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places

(continued)

11

to provide the requested religious diet raised a genuine issue with respect to substantial burden because:

> It is a reasonable inference that ODOC's failure to provide a halal diet either prevents Mr. Abdulhaseeb's religious exercise, or, at the least, places substantial pressure on Mr. Abdulhaseeb not to engage in his religious exercise by presenting him with a Hobson's choice—either he eats a non-halal diet in violation of his sincerely held beliefs, or he does not eat.

*Id.* at 1316-17.

We further found in *Abdulhaseeb* that the district court erred in finding no substantial burden existed when "there were or may have been periods" when the religious diet was not available to the inmate. *Id.* at 1320. We have also cited a prison's failure to provide Jewish inmates with food that satisfies their religious dietary restrictions as an example of a substantial burden on the exercise of religion under RLUIPA. *See Yellowbear*, 741 F.3d at 55-56. Under this authority, therefore, a zero-tolerance rule that requires suspension of inmates who may have been falsely or mistakenly accused of violating the zero-tolerance rule can impose a substantial burden on an inmate's sincerely held religious beliefs.

As noted above, this determination is not dispositive of Mr. Reed's RLUIPA challenge to the ODOC's zero-tolerance rule, because the statute provides

---

> substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice—an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Abdulhaseeb*, 600 F.3d at 1315.

12

that a prison regulation may properly burden inmates' religious exercise if the government demonstrates the regulation "is in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering" that interest. 42 U.S.C. § 2000cc-1(a). Because this is an affirmative defense, it need not be pled by the plaintiff inmate in order to state a claim. *See Ghailani v. Sessions*, 859 F.3d 1295, 1305-06 (10th Cir. 2017) (regarding identical affirmative defense provided in Religious Freedom Restoration Act (RFRA)). The magistrate judge nonetheless reached the issue of Defendants' justification for the zero-tolerance rule by virtue of construing their motion to dismiss this claim as a motion for summary judgment.

Even if this conversion had been proper,[9] the magistrate judge erred in the legal standard he applied with respect to this defense, which was whether the rule "further[ed] legitimate and compelling penological interests." R. Vol. II, at 32. This standard appears to be based in part on the Supreme Court's holding in *Turner v. Safley*, 482 U.S. 78 (1987), that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests," *id.* at 89. But the *Turner* standard is more relaxed than RLUIPA's standard. *Ghailani*, 859 F.3d at 1305. RLUIPA requires that the government demonstrate that application of the burden to the person "is in furtherance of a compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1).

---

[9] This conversion was not proper for the reasons stated in Section B below.

13

RLUIPA also requires that the government demonstrate that the substantial burden is the result of "the least restrictive means of furthering that compelling governmental interest." *Id*. § 2000cc-1(a)(2).

In addition, the "compelling interest test cannot 'be satisfied by the government's bare say-so.'" *Ghailani*, 859 F.3d at 1306 (quoting *Yellowbear*, 741 F.3d at 59). Instead, the government must present evidence that imposing a substantial burden on an inmate's sincerely held religious beliefs serves a compelling government interest and does so by the least restrictive means. *See Abdulhaseeb*, 600 F.3d at 1318-19. Here, the government neither addressed the appropriate standard in its motion nor provided evidence regarding the interests the policy serves or whether it is the least restrictive means of serving these interests. The district court therefore erred in granting summary judgment against Mr. Reed's RLUIPA challenge to the zero-tolerance rule.

The court also found Mr. Reed had failed to state a claim for prospective injunctive relief against ODOC's zero-tolerance rule because "[he] ha[d] not plausibly alleged that a future suspension [under the zero-tolerance rule] is imminent or likely" and thus had not alleged an ongoing violation of federal law by the state that may be remedied by such relief. R. Vol. II, at 12; *see also Green v. Mansour*, 474 U.S. 64, 68 (1985) (pursuant to *Ex parte Young*, 209 U.S. 123 (1908), federal courts may grant prospective injunctive relief against state officials "to prevent a continuing violation of federal law"). We must also disagree with this conclusion. As we found in *Abdulhaseeb*, where an inmate's access to a religious diet involves

14

ODOC policies, and the inmate "remains incarcerated in ODOC's custody, subject to ODOC policies," prospective injunctive relief in the form of a judgment requiring modification of these policies is available if the policies are found to violate RLUIPA. 600 F.3d at 1312. As a result, Mr. Reed need not allege that he is likely to be suspended under the ODOC policy in the near future in order to state a claim for prospective injunctive relief.[10]

In addition, we reject the argument that Mr. Reed had failed to allege irreparable harm. RLUIPA enforces the First Amendment right to exercise one's religion, *see* 42 U.S.C. § 2000cc-3(g); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012), and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Accordingly, infringement of his rights under RLUIPA, as Mr. Reed has alleged, would constitute irreparable injury. *See Opulent Life Church*, 697 F.3d at 295; *see also Kikumura v. Hurley*, 242 F.3d 950, 963

---

[10] The magistrate judge also suggested Mr. Reed failed to state a claim for prospective injunctive relief against the zero-tolerance rule because he did not allege that he had requested reinstatement to his kosher diet. R. Vol. II, at 11-12. However, while it is not entirely clear from Mr. Reed's complaint, it appears from the allegations there that he was still suspended from receiving a kosher diet at the time the complaint was prepared. In addition, as Mr. Reed properly noted in his objections to the magistrate judge's recommendation, the form he must complete to request reinstatement requires that he acknowledge and implicitly admit his prior violations of the zero-tolerance rule, something Mr. Reed asserts he cannot do with respect to his second alleged violation without lying in violation of Jewish law. *See* R. Vol. I, at 113; *id.* Vol. II, at 75-76. Mr. Reed also represents in his briefing to this court that the prison reinstated his kosher diet when he filed this appeal. Aplt. Opening Br. at 4.

15

(10th Cir. 2001) (finding allegation that prison violated RFRA, which also protects religious freedoms derived from the First Amendment, *see Ghailani*, 859 F.3d at 1304-05, was irreparable harm).

For the reasons stated above, we remand this claim for further proceedings against the relevant defendants in their official capacities.

B.  Denial of motions for a continuance and discovery

The district court struck these motions as moot because the magistrate judge had informed Mr. Reed of the possibility of summary judgment conversion when Defendants filed their motion to dismiss and, therefore, "[t]he proper time for discovery requests ha[d] passed." R. Vol. II, at 99-100. We review this decision for abuse of discretion. *See Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000).

In the magistrate judge's order referenced and relied upon by the district court in striking these motions, *see* R. Vol. II, at 99 (citing Order, Oct. 19, 2016, ECF No. 26), the magistrate judge stated "*to the extent that the Motion to Dismiss relies upon and is supported by affidavits and/or other documentary evidence*, Plaintiff should be aware of the provisions of Rule 56" and "*[w]hen a dispositive motion is supported by affidavits and/or other documentary evidence*, the motion may be converted to one for summary judgment under Fed. R. Civ. P. 12. *In this instance*, the party opposing the motion must respond with affidavits and/or documentary evidence." Order 1, ECF No. 26 (emphasis added). But Defendants' motion to dismiss did not rely on or attach external documentary evidence. Accordingly,

16

Mr. Reed did not have notice that summary judgment was a possibility, and that he might want to seek a continuance to allow discovery as a result, before the magistrate issued his report and recommendation. In addition, the magistrate judge had stayed discovery until Defendants filed their Special Report, which they did one day before they filed their Motion to Dismiss. As a result, Mr. Reed had no opportunity to conduct discovery before Defendants filed their motion and no reason to believe he needed to initiate discovery in order to respond to their motion.

Under these circumstances, the district court abused its discretion in refusing to grant Mr. Reed's motions for a continuance and for discovery.

C. Denial of motion for leave to amend

We also review the district court's denial of Mr. Reed's motion for leave to amend his complaint for abuse of discretion, "[b]ut if the district court denied leave to amend because it determined that amendment would be futile, our review . . . includes de novo review of the legal basis for the finding of futility." *Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014) (internal quotation marks omitted).

The district court denied Mr. Reed's motion for leave to amend on the ground that his proposed amended complaint "fails to cure the deficient claims" identified in the magistrate judge's report and recommendation. R. Vol. II, at 100. In his proposed amended complaint, Mr. Reed reasserted and expanded on his claims against Defendants Bell and Curry in their individual capacities for violating his First Amendment free exercise rights and for retaliating against him.

17

In his original complaint, Mr. Reed alleged these defendants violated his free exercise rights by conspiring to take action, and making a false Incident Report that they knew would result in Mr. Reed being suspended from his kosher meal program, and that they did so in retaliation for him threatening to sue Defendant Curry regarding another aspect of the prison's religious diet program. The magistrate judge recommended that the district court dismiss these claims without prejudice because Mr. Reed had not supported his conspiracy allegation with specific factual allegations as required. *See id.* at 15. Mr. Reed addressed this deficiency in his proposed amended complaint by referencing and attaching an affidavit from another inmate who reported in detail how he overheard Defendants Curry and Bell planning to falsely accuse Mr. Reed of taking a non-kosher meal. *Id.* at 55, 59, 65-66. There was no basis, therefore, for the district court to conclude that Mr. Reed had failed to cure the deficiencies identified by the magistrate judge with respect to these claims, and amendment should have been permitted.

## CONCLUSION

For the reasons stated above, this matter is remanded to the district court for further proceedings consistent with this order and judgment.

In addition, we grant Mr. Reed's motion to proceed on appeal without prepayment of costs or fees. After granting Mr. Reed leave to proceed in forma pauperis in the proceedings before it, the district court denied Mr. Reed's request to proceed in forma pauperis on appeal upon finding that his appeal was not taken in good faith because it was frivolous. *Id.* at 106. We find for the reasons stated above

18

that his appeal was not frivolous and therefore grant him leave to proceed without

prepayment of filing and docketing fees in this appeal.  *See* 28 U.S.C. § 1915(a)(1).

We remind Mr. Reed, however, that he remains obligated to make partial payments

until the entire filing and docketing fees are paid in full.  *See id.* § 1915(b).

Entered for the Court


Timothy M. Tymkovich
Chief Judge