FILED
United States Court of Appeals
Tenth Circuit

May 23, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOSHUA JAMES ROBERTSON,

    Plaintiff - Appellant,

v.

CHAUNCEY BIBY, Chaplain, El Dorado
Correctional Facility, in his individual and
official capacity; RICK BARRETT,
Chaplain, El Dorado Correctional Fa;
LARRY HOSHAW, Unit Team Manager,
El Dorado Correctional Facility, in his
individual and official capacity; JAMES
HEIMGARTER, Warden, El Dorado
Correctional Facility, in his individual and
official capacity; GLORIA GEITHER,
Director of Religious Programs, Kansas
Department of Corrections, in her
individual and official capacity;
DOUGLAS BURRIS, Secretary of
Corrections Designee, Kansas Department
of Corrections, in his individual and
official capacity,

    Defendants - Appellees.
_____

No. 15-3295
(D.C. No. 5:12-CV-03109-SAC)
(D. Kan.)

**ORDER AND JUDGMENT**[*]
_____

_____

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **LUCERO**, **MATHESON**, and **BACHARACH**, Circuit Judges.

_____

Joshua Robertson filed suit under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") seeking access to an audio Bible. The district court dismissed for failure to state a claim because it concluded Robertson could hear the Bible read aloud through several alternative methods. We conclude that the alternatives identified by the district court are insufficient or impracticable. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings.

**I**

Robertson is a Kansas state prisoner serving a life sentence. He alleges that as a Messianic Jew, his faith requires him to hear the Bible read aloud. Beginning in 2010, he requested as an accommodation that the prison allow him to obtain an audio Bible. In 2014, his mother mailed him a "My-iBible" device (an MP3 player containing only a recording of the Bible), but prison officials denied him access to it because he is housed in a long-term segregation unit. Segregated prisoners—unlike general population prisoners—are not permitted to possess MP3 players.[1]

Defendants explain that general population inmates must purchase an MP3 player through an approved vendor and connect the player to the vendor's kiosk once every

_____

[1] Robertson alleges that the prison exempts blind and illiterate inmates from this prohibition such that they may possess an audio Bible.

-2-

thirty days, but segregated inmates do not have access to the kiosk.[2] Segregated inmates may purchase televisions or radios so long as they do not have a negative deposit account balance. However, Robertson has a substantial negative account balance. Segregated prisoners also have telephones in their cells, for which third parties may provide pre-paid phone cards at a cost of eighteen cents per minute.[3]

In 2012, Robertson filed a complaint in the district court seeking declaratory and injunctive relief. He alleged that denial of the MP3 player and audio Bible violated RLUIPA by imposing a substantial burden on his religious exercise. Robertson acknowledged in his complaint that his preferred MP3 audio player is not the only way he could hear the Bible read aloud. In particular, he stated the requirement would be fulfilled if the prison provided chapel services for segregated inmates or if he were able to purchase a television or radio so that he could listen to religious broadcasts.[4] In a later

---

[2] Robertson submitted an affidavit below suggesting that segregated prisoners are at least occasionally escorted through the portion of the general population facility containing the kiosk.

[3] In his complaint, Robertson alleged that a call cost two dollars for two hours. However, he subsequently alleged that the prison increased the rate to eighteen cents per minute.

[4] On appeal, Robertson contends that television programs, radio broadcasts, telephone calls, and clergy visits are all insufficient to satisfy his religious need to hear the Bible read aloud. However, in proceedings below, Robertson expressly stated television, radio, or chapel services would suffice.

filing, Robertson stated he would be satisfied if the prison would allow a third party to purchase an MP3 player for him through the prison's approved vendor.[5]

The district court held that alternatives to an MP3 player exist, and thus Robertson's complaint did not adequately allege that denial of the MP3 player substantially burdened his religious exercise. It granted defendants' motion to dismiss for failure to state a claim and denied Robertson's motion for summary judgment. Robertson filed a combined motion to alter or amend judgment and for relief from judgment, which the district court denied. Robertson timely appealed.

## II

We review a district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) de novo. Albers v. Bd. of Cty. Comm'rs, 771 F.3d 697, 700 (10th Cir. 2014).[6] To survive a motion to dismiss, a plaintiff "must plead facts sufficient to state a claim to relief that is plausible on its face." Albers, 771 F.3d at 700 (quotation omitted). "At the motion-to-dismiss stage, we must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Id. (quotation omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported

---

[5] The approved-vendor MP3 player does not offer an audio Bible for purchase. Thus, for this alternative to satisfy Robertson's religious belief, the prison would need to make an audio Bible available on that device. Further, prison officials would need to provide a way to connect Robertson's device to the vendor kiosk every thirty days.

[6] Robertson also seeks to appeal the district court's denial of his motion for summary judgment. We do not consider that ruling because a district court's denial of summary judgment is not appealable. Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1250-51 (10th Cir. 1992), as modified on reh'g (Oct. 20, 1992).

-4-

by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although we construe pro se filings liberally, we do not need to accept conclusory allegations as true. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

RLUIPA provides that a government may not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . , unless the government demonstrates that imposition of the burden on that person" is the "least restrictive means" of furthering a "compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Religious exercise is substantially burdened if "a government . . . prevents participation in conduct motivated by a sincerely held religious belief." Abdulhaseeb v. Calbone, 600 F.3d 1301, 1315 (10th Cir. 2010). "At a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious item or observance was more than an inconvenience to one's religious practice." Id. at 1316 (quotation and alteration omitted).

Defendants do not contest that Robertson has a sincerely held religious belief which requires him to hear the Bible read aloud. However, they contend that the ban on MP3 players is, at most, an inconvenience because Robertson has access to other means of having the Bible read to him. Specifically, they argue that Robertson may hear the Bible read during visits from his Rabbi or other individuals, over the telephone in his cell, from a television or radio purchased through an approved vendor, or by transitioning back into the prison's general population. We conclude that the defendants' proffered alternatives do not justify dismissal under Rule 12(b)(6).

-5-

Robertson correctly observes that he cannot require a Rabbi or others to visit him for the purpose of reading him the Bible. And we have previously held that RLUIPA defendants may not rely on potential volunteerism by third parties to provide plaintiffs with an alternative means of practicing their faith. In Beerheide v. Suthers, 286 F.3d 1179 (10th Cir. 2002), we rejected prison officials' argument "that the Jewish community could provide kosher food to prisoners," noting that third parties "cannot be expected or required to provide food to the prisoners." Id. at 1186-87. Moreover, Robertson's Rabbi submitted an affidavit stating that he has on occasion been denied permission to visit Robertson, and that when he is allowed to visit he is not permitted to bring a Bible with him in order to read it to Robertson.

Defendants' proffered phone call alternative fails for the same reason. This argument presumes Robertson has family or friends available and willing to receive his calls. But in the proceedings below, Robertson alleged that he has no family or friends with a local telephone number. Moreover, at a rate of eighteen cents a minute, a one hour phone call each week would cost over forty dollars per month.[7] But at the time he filed his complaint, Robertson's deposit account reflected a negative balance of $750. Defendants may not rely on an alternative that requires substantial funding because "any

_____

[7] We note that a preliminary order in the district court construed Robertson's belief as requiring him to hear the Bible read aloud once every seven years. Robertson objected to this representation. Because Robertson pled that chapel services would fulfill his religious needs, we assume for purposes of this argument that something on the order of one hour per week would be sufficient to satisfy his religious beliefs. In doing so, we do not mean to offer a definitive ruling regarding the quantity of reading Robertson requires. See Abdulhaseeb, 600 F.3d at 1314 n.7 ("Neither this court nor defendants are qualified to determine that [a given alternative] should satisfy [plaintiff's] religious beliefs.").

ability to purchase is chimerical where a plaintiff is indigent." Abdulhaseeb, 600 F.3d at 1317; see also Beerheide, 286 F.3d at 1189 ("Forcing prisoners to decide between communicating with family and legal representatives, seeking medical treatment, and following religious tenets constitutes a Hobson's choice rather than a true alternative."). And, again, requiring a third party to donate the significant cost of the phone cards is not a viable solution. Id. at 1188.

Under prison policy, Robertson is prohibited from purchasing a television or radio, or having one donated, due to his negative deposit account balance. And in assessing whether a government has imposed a substantial burden, we look to the particular plaintiff rather than to inmates generally. See Abdulhaseeb, 600 F.3d at 1314 (proper inquiry is not whether prohibition "substantially burdens the religious exercise of any [religious] practitioner, but whether it substantially burdens [the plaintiff's] own exercise of his sincerely held religious beliefs"). Because of Robertson's indigent status, the television and radio options are illusory. See Beerheide, 286 F.3d at 1188-89. Defendants counter that "RLUIPA does not require a state to pay for an inmate's devotional accessories." Cutter v. Wilkinson, 544 U.S. 709, 720 n.8 (2005). But this argument misconstrues Robertson's request. He does not ask the government to pay for an audio Bible or a television. Rather, he asks the government to allow him access to an audio Bible which a third party has already purchased and donated to him.

Finally, defendants argue that Robertson could work to reintegrate into the general population, and thereby have other inmates read the Bible to him. But this alternative does not alleviate the burden imposed on him while he is in segregation. The mere fact

that an inmate is in administrative segregation is not itself a sufficient justification for a substantial burden on religious exercise. See Yellowbear v. Lampert, 741 F.3d 48, 53 (10th Cir. 2014). We also note that Robertson was placed in protective custody due to threats from other inmates. Thus, Robertson is not solely responsible for his segregation.

Defendants do not offer a viable alternative countering Robertson's well-pleaded allegation that prison policy renders him practically unable to exercise his sincerely held religious need to hear the Bible read aloud. Unless defendants can rebut Robertson's alleged facts, they must show that the burden they have imposed on Robertson "serves a compelling governmental interest and is the least restrictive means of furthering that interest." Id. at 56 (quotations omitted). Because the district court dismissed under the substantial burden prong of the RLUIPA analysis, it did not consider whether defendants offered any compelling interest in barring the audio Bible, nor whether they could "demonstrate the claimant's alternatives are ineffective to achieve the government's stated goals." Id. at 63 (quotation omitted).

## III

The district court's dismissal for failure to state a claim is **REVERSED**. We **REMAND** for further proceedings not inconsistent with this order and judgment.


Entered for the Court


Carlos F. Lucero
Circuit Judge


-8-