RENDERED:  DECEMBER 2, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0230-MR

ROY LUKE SUTHERLAND, JR.                                    APPELLANT


v.          APPEAL FROM FRANKLIN CIRCUIT COURT
          HONORABLE THOMAS D. WINGATE, JUDGE
          ACTION NO. 21-CI-00697


KENTUCKY DEPARTMENT OF
CORRECTIONS; PHILLIP CAMPBELL;
JANET CONOVER; COOKIE CREWS;
AND ANNA VALENTINE                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; CALDWELL AND MAZE, JUDGES.

CLAYTON, CHIEF JUDGE:  Roy Luke Sutherland, Jr. appeals *pro se* from the

Franklin Circuit Court's order of February 28, 2022, denying his motion for default

judgment and/or summary judgment and his motion to strike and granting the

motion to dismiss of the Kentucky Department of Corrections (DOC); Cookie

Crews, Commissioner; Janet Conover, Director of Operations; Anna Valentine, Warden; and Phillip Campbell, Deputy Warden of the Kentucky State Reformatory. The trial court also denied Sutherland's Kentucky Rules of Civil Procedure (CR) 59.05 motion to disqualify itself from the case. Upon review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Sutherland, an inmate at the Kentucky State Reformatory, is a Christian who holds a sincere religious belief that he needs to hear the Bible read aloud on a daily basis. On May 7, 2020, he submitted a Request for Accommodation of Religious Practice, seeking to purchase a "My-iBible." This is an MP3-style voice-only audio player that is pre-loaded with a recording of the Bible. Files cannot be added to or subtracted from it. It is pocket-sized and comes with a charger and earbuds. Sutherland requested the device in order to listen to the Bible in the same way other inmates listen to music.

Sutherland's request was denied by the Deputy Warden, who explained that the device did not meet the security guidelines relating to inmate electronics because "[i]t is not clear plastic with tamper-resistant features. It could be taken apart, allowing things to be hidden inside or with the right know-how, manipulation of its electronic components or storage."

The Warden offered Sutherland an alternative audio version of the Bible, writing, "We offer the Bible on CD in the Chapel Library. For less than the cost of a My-iBible, I/M Sutherland can buy an already approved portable personal CD player and headphones (which he may already own), check out the CDs from the Chapel Library, then listen to it at his leisure. That accomplishes the same goal with no inconvenience to anyone and without creating security concerns." The DOC Director of Operations reviewed the request and denied it on the same grounds, stating, "Per CPP [Corrections Policy and Procedure], all electronic devices (tv, clock, radio, cd player, etc.) must be clear and see through. The My-iBible is black and cannot be seen through." She affirmed that an audio CD of the Bible was available for Sutherland to check out and use at his leisure.

Sutherland renewed his request to purchase a My-iBible on August 9, 2021. His request was denied on the same basis that all electronic devices must be clear and see through.

Sutherland then sought injunctive relief in the Franklin Circuit Court, claiming that the refusal to allow him to purchase the My-iBible impermissibly burdened the exercise of his religion, in violation of the federal Religious Land Use and Institutionalized Persons Act (RLUIPA); Section 5 of the Kentucky Constitution; and the Kentucky Religious Freedom Restoration Act (KRFRA). He filed a complaint naming as defendants the Kentucky Department of Corrections,

-3-

by/through Cookie Crews, Commissioner; Janet Conover, Director of Operations; Anna Valentine, Warden; and Phillip Campbell, Deputy Warden of the Kentucky State Reformatory. The defendants filed a motion to dismiss. Sutherland then filed a motion for default judgment and/or summary judgment as a matter of law and a motion to strike. The circuit court denied Sutherland's motions and granted the defendants' motion to dismiss. Sutherland filed a CR 59.05 motion to vacate, seeking to disqualify the trial judge from the case. The trial court denied the motion and this appeal followed.

## STANDARD OF REVIEW

> A motion to dismiss for failure to state a claim upon which relief may be granted admits as true the material facts of the complaint. So a court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved. Accordingly, the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true. This exacting standard of review eliminates any need by the trial court to make findings of fact; rather, the question is purely a matter of law. Stated another way, the court must ask "if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?" Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead an appellate court reviews the issue de novo.

*Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (internal quotation marks and citations omitted).

-4-

## ANALYSIS

Sutherland argues that the trial court erred in refusing to grant his motion for a default judgment because the appellees did not file a timely answer to his complaint. CR 55.01 allows a party to move for a default judgment when the other party "has failed to plead or otherwise defend." An exception to this Rule is provided in CR 55.04, which states that "[n]o judgment by default shall be entered against the Commonwealth or an officer or agency thereof . . . unless the claimant establishes his claim or right to relief by evidence satisfactory to the Court." This action was taken against an agency and officers of the Commonwealth, and the trial court held that Sutherland had failed to establish his substantive claims to relief. Consequently, the trial court did not err in refusing to grant the default judgment.

Next, Sutherland argues that the trial court erred in failing adequately to evaluate his claim under RLUIPA. RLUIPA provides that the government shall not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person . . . is in furtherance of a compelling governmental interest; and . . . is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The Kentucky counterpart of

RLUIPA, the KRFRA, the applicability of which is not confined solely to individuals in institutions, similarly states:

> Government shall not substantially burden a person's freedom of religion. The right to act or refuse to act in a manner motivated by a sincerely held religious belief may not be substantially burdened unless the government proves by clear and convincing evidence that it has a compelling governmental interest in infringing the specific act or refusal to act and has used the least restrictive means to further that interest. A "burden" shall include indirect burdens such as withholding benefits, assessing penalties, or an exclusion from programs or access to facilities.

Kentucky Revised Statue (KRS) 446.350.

To state a viable claim under these statutes, Sutherland must first demonstrate that the government has placed a substantial burden on the exercise of his religion. "For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3rd Cir. 2007). "[A]t a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious item or

observance was more than an inconvenience to one's religious practice."
*Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010) (citation omitted).

The trial court held as a matter of law that the denial of Sutherland's request for the My-iBible did not substantially burden his ability to listen to the Bible on a daily basis. The trial court acknowledged that using the CD recordings of the Bible might be less convenient than the My-iBible, but the restriction did not rise to the level of imposing a substantial burden on his exercise of his religion.

Sutherland argues that the trial court failed to consider the evidence he placed in the record showing that the appellees' alleged security concerns were exaggerated because larger electronic devices which are not clear or see through, such as keyboards and clocks, are permitted in the prison. Apparently, the only electronic listening devices prisoners are permitted to use outside in the prison yard are MP3 players, which means Sutherland cannot listen to the Bible in the yard whereas the other inmates may listen to music in that area. But the fact that Sutherland may not listen to the Bible while he is out in the prison yard does not constitute a substantial burden on the exercise of his religious beliefs. It is undisputed that he is permitted to listen to the Bible on CD at any time everywhere else in the prison facility. At most, it is an inconvenience that he is unable to listen to the Bible in the prison yard.

Sutherland argues that the trial court was obligated under Kentucky

Rules of Evidence (KRE) 302 to apply the holding in *Robertson v. Biby*, 647 F. App'x 893 (2016), and on that basis to rule in his favor. KRE 302 does not mandate such an action on the trial court's part, and, in any event, *Robertson* is not dispositive of the case because the underlying facts are significantly distinguishable. Robertson was a prison inmate, housed in a segregation unit, who, like Sutherland, believed that his religion required him to hear the Bible daily. Unlike general population prisoners, segregated prisoners were not permitted to possess MP3 players, so Robertson was denied access to a My-iBible his mother sent to him. The prison officials argued that his religious belief was nonetheless not substantially burdened, because he could hear the Bible read aloud during visits from his Rabbi or other individuals, over the telephone in his cell, from a television or radio purchased through an approved vendor, or by transitioning back into the prison's general population. The appellate court disagreed, holding that these options were not viable alternatives because Robertson could not require a rabbi or other volunteers to visit him for the purpose of reading the Bible; he could not afford to purchase a TV or radio; the telephone cost eighteen cents per minute to use and he had no friends or family with a local phone number; and finally, the fact that he was in segregation was not sufficient justification to burden the exercise of his religion. *Robertson*, 647 F. App'x at 896-97.

By contrast, Sutherland has access to free CD recordings of the Bible from the chapel library. He does not need to rely on volunteers in order to engage in his religious practice and he has not claimed he is unable to afford a CD player.

Because Sutherland has failed as a matter of law to meet the threshold standard of showing that a substantial burden has been placed on his religious beliefs, we need not consider whether the actions of the appellees are motivated by a compelling governmental interest.

Finally, Sutherland argues that the trial judge, who presides over Division II of the Franklin Circuit Court, abused his discretion in refusing to disqualify himself from the proceedings under KRS 26A.015(2)(e). The statutory provision requires a judge to recuse himself "[w]here he has knowledge of any other circumstances in which his impartiality might reasonably be questioned." *Id*. Sutherland claims the judge's impartiality was suspect because his brother-in-law served as the Secretary of the Justice and Public Safety Cabinet (JPSC) fifteen years before and the appellees were all employees of the Kentucky DOC, which falls under the control of the JPSC. Sutherland also contends that it is reasonable to presume the judge created other relationships with unnamed individuals who are still employed with the JPSC. As evidence, he attached to his motion an order dating from 2011 in which a case was transferred, without any explanation or reference to the judge's brother-in-law, from Division II to Division I of the

Franklin Circuit Court, and a notice dating from 2007 in which the judge in Division II informed some unnamed litigants of a potential conflict of interest because his brother-in-law was at that time the Secretary of the JPSC overseeing the DOC, the Department of Public Advocacy, the Kentucky State Police, and the Parole Board. The notice stated that the judge did not believe the relationship would prejudice his judgment in any way, but he wished to disclose it and offer the litigants a chance to request a transfer to Division I. These documents, dating from ten and fifteen years ago, respectively, and Sutherland's purely speculative belief regarding unnamed individuals at the JPSC, are insufficient to create a reasonable question concerning the impartiality of the trial judge. The trial court did not err in denying the motion to vacate on these grounds.

## CONCLUSION

For the foregoing reasons, the orders of the Franklin Circuit Court denying the motion for default judgment and/or summary judgment and the motion to strike and granting the motion to dismiss and denying the motion to vacate are affirmed.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEES: |
|---|---|
| Roy Luke Sutherland, Jr. | Kristin Wehking |
| LaGrange, Kentucky | Frankfort, Kentucky |

-10-